# SHARON *v.* TUCKER.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 216.   Argued March 15, 16, 1892. — Decided April 11, 1892.

Adverse possession of real estate in the District of Columbia, for the period designated by the Statute of Limitations in force there, confers upon the occupant a complete title upon which he can stand as fully as if he had always held the undisputed title of record.

A possession, to be adverse, must be open, visible, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants.

A person who has acquired title by adverse possession may maintain a bill

in equity against those who, but for such acquisition, would have been the owners, for the purpose of having his title judicially ascertained and declared, and to enjoin the defendants from asserting title to the same premises from former ownership that has been lost.

Such a bill is not a bill of peace, nor is it strictly a bill *quia' timet.* The ground of the jurisdiction is the obvious difficulty and embarrassment in asserting and protecting a title not evidenced by any record, but resting in the recollection of witnesses, and the warrant for its exercise is found in the ordinary jurisdiction of equity to perfect and complete the means by which the right, estate or interest of holders of real property, that is their title, may be proved or secured, or to remove obstacles to its enjoyment.

THE court stated the case as follows :

This was a suit in equity to establish, as matter of record, the title of the complainants to certain real property in the city of Washington, constituting a part of square number one hundred and fifty-one, and to enjoin the defendants from asserting title to the same premises as heirs of the former owner.

The facts which gave rise to it, briefly stated, are as follows : In 1828, Thomas Tudor Tucker died seized of the premises in controversy. He had, at one time, held the office of Treasurer of the United States, and resided in Washington, but at the time of his death he was a resident of South Carolina. The property did not pass under his will but descended to his heirs at law. It does not appear that after his death any of the heirs took possession of the property or assumed to exercise any control over it. In 1837 the square was sold for delinquent taxes, assessed by the city against "the heirs of Thomas T. Tucker," and was purchased by Joseph Abbott, then a resident of the city. The taxes amounted to $38.76, and the sum bid by the purchaser was $250. In 1840 a tax deed, in conformity with the sale, was made to Abbott, purporting to convey to him a complete title to the square. It is admitted that the deed was invalid for want of some of the essential preliminaries in assessing the property and in advertising it for sale. It does not appear, however, that the purchaser had any knowledge of this invalidity. Early in the following year, 1841, he took possession of the square and

enclosed it with a board fence and a ditch with a hedge planted on one side of it. It was a substantial enclosure, sufficient to turn stock and keep them away. He was a stable-keeper, and, in connection with this business, cultivated the ground and raised crops upon it in 1841. From the time he took possession until 1854 the square was enclosed, and each season it was cultivated. In 1854 he leased the square to one Becket for the period of ten years at a yearly rent of one hundred dollars. Becket took possession under his lease and kept the ground substantially enclosed, and he occupied and cultivated it from that time up to 1862. In the fall of that year soldiers of the United States, returning from the campaign in Virginia, were encamped upon the square, and, as it appears, they committed such depredations upon the fence, buildings and crops that the lessee was obliged to abandon its cultivation. Abbott died in April, 1861, and, by his will, devised the square to his widow. In August, 1863, she sold and conveyed it to one Perry, and he kept a man in charge of the same, who lived in a small building which Becket had built and occupied during his lease of the premises under Abbott. In 1868, Perry sold the entire square to Henry A. Willard for the consideration of seventeen thousand six hundred dollars. He divided the square into small lots for buildings for residences, and upon one side of the square, fronting on T street, erected twelve substantial dwelling-houses, which have been since occupied up to the commencement of this suit. In 1872, Willard sold and conveyed a portion of the square, the premises in controversy, to J. M. Latta, trustee, for a valuable consideration, and from him the title has passed by regular conveyances to the complainants herein. From 1840 to 1863 the square was chiefly valuable for agricultural purposes, but since then, and especially of late years, its only value has been for buildings as residences, and has been so regarded by its owners. From 1840 up to the present time the taxes upon the property have been paid by Abbott and his successors in interest. None of the heirs of Mr. Tucker, nor any one claiming under the heirs, has paid or offered to pay any taxes assessed on the property, nor, since that date,

up to the commencement of these suits, have any of the defendants therein or their predecessors in interest asserted any claim to the property or interest in it, or attempted in any way to interfere with its possession or control. Soon after the sale to Perry, in 1863, the tax deed was passed upon by eminent counsel in the District, the late Richard S. Coxe and James M. Carlisle, and the title by it was pronounced by them to be indisputable. It was only a short time before the institution of this suit that the invalidity of the tax deed as a source of title was ascertained. A desire to dispose of the property led the complainants to have an investigation made and an abstract of title obtained. It was then discovered that they could not obtain any abstract of title which purchasers would accept, in consequence of certain defects in the assessment of the taxes under which the sale was made and the deed to Abbott was executed. They were consequently embarrassed and defeated in their efforts to dispose of the property. To remove this embarrassment this suit was accordingly brought by the complainants to obtain a judicial determination of the validity of their title and an injunction against the defendants claiming under the previous owner.

There was no substantial disagreement between the parties as to the facts, but the defendants insisted and relied solely upon the ground that a court of equity could afford no relief to the complainants, because they were not at the commencement of the suit in actual possession of the premises.

The court below, at special term, sustained this view, and entered a decree dismissing the bill. At general term it affirmed that decree; and to review this last decree the case is brought here by appeal.

*Mr. C. J. Hillyer* and *Mr. J. H. Ralston* for appellants.

*Mr. Eppa Hunton* and *Mr. Henry Wise Garnett* for appellees.

It is respectfully submitted that the evidence in these cases does not show such open, notorious and continuous possession

of the land in controversy as is necessary to establish a title by adverse possession.

Even if it should be considered that the complainants have established a title to the property by adverse possession, yet they are not entitled to the relief prayed for in their bill. A party claiming title by adverse possession alone cannot maintain a bill against the original owners on the ground that their title is a cloud upon his own. *Frost* v. *Spitley*, 121 U. S. 552.

Those only who have a clear legal and equitable title to land connected with possession have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title. *Orton* v. *Smith*, 18 How. 263; *Croat* v. *Brown*, 11 Maryland, 158; *Marks* v. *Main*, 4 Mackey, 559, 567; *Herrington* v. *Williams*, 31 Texas, 448, 460; *Holland* v. *Challen*, 110 U. S. 15; *Whitehead* v. *Shattuck*, 138 U. S. 146; *Gage* v. *Kaufman*, 133 U. S. 471.

The proof shows the plaintiffs are out of possession, and they admit they have no legal title under the tax deed. *Alexander* v. *Pendleton*, 8 Cranch, 462; *Peirsoll* v. *Elliott*, 6 Pet. 95.

The court below in affirming the decree of the equity court followed its decision in *Marks* v. *Main*, 4 Mackey, 559. It is submitted that this decision of the District Court in *Marks* v. *Main* is clearly right, and when applied to the facts in these two cases the dismissal of these bills followed as a necessary consequence.

The counsel for complainants in their brief seek to distinguish these cases from *Marks* v. *Main* by the statement that "partial occupation, payment of taxes and constant exercise of dominion such as was usual with owners and adapted to the nature and condition of the premises during the twenty-three years following 1861 were sufficient to continue and preserve the adverse character of a possession previously commenced by actual enclosure." They refer to the following authorities to sustain this position: *Ellicott* v. *Pearl*, 10 Pet. 412; *Ewing* v. *Burnet*, 11 Pet. 41: *Fletcher* v. *Fuller*, 120 U. S. 534.

The evidence shows no act of possession of the property

involved in these two suits (unless the payment of taxes can be so construed) since 1861.

*Ellicott* v. *Pearl* was a writ of right and did not involve the question of chancery jurisdiction. It decides that, when a party takes possession under a deed containing metes and bounds and builds on a part or encloses a part, the possession is of the whole tract included in metes and bounds.

*Ewing* v. *Burnet was an action of ejectment*, and the doctrine held (never seriously controverted) that to constitute adverse possession there need not be a fence or building, but for this purpose that visible and notorious acts of ownership are exercised over the premises.

*Fletcher* v. *Fuller* was an action of ejectment. In this case the court decides under what circumstances a deed may be presumed to have been given.

These cases have no bearing on the question of chancery jurisdiction.

In the 4th paragraph of the brief the proposition is laid down that " the relation of defendants to the premises and to the complainants authorizes the latter to seek relief in equity."

What is this relation? The defendants hold the absolute record title to this property. The complainants claim under a tax title admitted to be invalid and which is in fact void. The complainants have never been in possession, except so far as payment of taxes may constitute possession. Authorities are abundant and harmonious that payment of taxes and speaking publicly of the claim is not sufficient evidence of claim of right.. *Ewing* v. *Burnet*, 11 Pet. 41; *Keefe* v. *Bramhall*, 3 Mackey, 551.

In *Reed* v. *Field*, 15 Vermont, 672, it was held that a tax deed of fifty years and payment of taxes under color of tax deed was not sufficient to show even color of title without showing validity of deed. In these cases the deed is admitted to be invalid.

See also *Naglee* v. *Albright*, 4 Wharton, 291; *Chapman* v. *Templeton*, 53 Missouri, 463; Angell on Limitation, § 396.

The case of *Bunce* v. *Gallagher*, 5 Blatchford, 48, cited in the brief, does not apply to these cases, because the jurisdiction in

that case was placed upon fraud, the well established ground of equitable jurisdiction.

The case of *Allen* v. *Hanks*, 136 U. S. 300, was an injunction on part of a married woman to stop the sale of her land, held as separate property, under executions for her husband's debts. The jurisdiction was maintained on the ground that she *was in possession.*

The case of *Holland* v. *Challen*, 110 U. S. 15, cited by counsel for complainants in their brief, is direct authority for the position assumed by defendants in these causes.

The relief was given in that case, but the court expressly puts its decision on a statute of Nebraska (quoted in the opinion of Justice Field) which authorized persons *whether in possession or not* to file a bill in equity for the purpose of quieting title to real estate. Justice Field proceeds to give the law on the subject prior to and independent of this statute. To entitle parties to relief independent of this statute, he says, page 19 : " To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential. He must have been in possession of the property, he must have been disturbed by repeated actions at law, and he must have established his right by successive judgments in his favor." These three particulars do not concur in these cases — in fact, neither one exists. The old and familiar doctrine of equity has not been changed by statute in this district, and under authority of *Holland* v. *Challen*, the courts of equity have no jurisdiction over these cases.

Complainants' counsel, in their brief, further assert that no authority can be found to support the decision of the court below. *Holland* v. *Challen* is authority from this court for the doctrine which guided the court below to its decision. Other authorities are numerous, and the following cited : *Clark* v. *Smith*, 13 Pet. 195.

This was a case from Kentucky, the legislature of which had passed a law authorizing any person who was in possession of land, having already title thereto to summon into a court of chancery any other person holding any claim of title whatsoever for the purpose of examining and determining the

question of title and to remove the cloud upon the title of complainant. This court held that under the ordinary faculty of a court of chancery this relief could not be administered, but it was competent for the legislature of Kentucky to declare what is a cloud on the title and to authorize a court of chancery to clear up any such cloud. The jurisdiction was maintained expressly on the Kentucky statute.

In *Starks* v. *Starrs*, 6 Wall. 409, Mr. Justice Field, in delivering the opinion of the court, which was based upon a statute of Oregon, says:

"This statute confers a jurisdiction beyond that ordinarily exercised by courts of equity to afford relief in the quieting of title and possession of real property. By the ordinary jurisdiction of those courts suits would not lie for that purpose unless the possession of the plaintiff had been previously disturbed by legal proceedings on the part of the defendant and the right of the plaintiff had been sustained by successive judgments in her favor."

In *Phelps* v. *Harris*, 101 U. S. 370, Mr. Justice Bradley, in delivering the opinion of the court, again affirms that the ordinary jurisdiction of courts of equity, not enlarged by statute, does not embrace cases of this kind. See also *United States* v. *Wilson*, 118 U. S. 86.

These authorities sustain the decision of the court below, and it is believed that no case can be found which lays down a doctrine in conflict with it.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

The title of the complainants is founded upon the adverse possession of themselves and parties, through whom they derive their interests, under claim and color of title, for a period exceeding the statutory time which bars an action for the recovery of land within the District of Columbia. The statute of limitation to such cases in force in the District is that of 21 James I, ch. 16. That statute, passed "for quieting of men's estates and avoiding of suits," among other things

declared that no person or persons should at any time thereafter make any entry into any lands, tenements or hereditaments but within twenty years next after his or their right or title shall thereafter have first descended or accrued to the same, and that in default thereof such persons not entering, and their heirs, should be utterly excluded and debarred from such entry thereafter to be made, any former law or statute to the contrary notwithstanding.

Twenty years is, therefore, the period limited for entry upon any lands within this District after the claimant's title has accrued. After the lapse of that period there is no right of entry upon lands against the party in possession, and all actions to enforce any such alleged right are barred. Complete possession, the character of which is hereafter stated, of real property in the District for that period, with a claim of ownership, operates therefore to give the occupant title to the premises. No one else, with certain exceptions — as infants, married women, lunatics and persons imprisoned or beyond the seas, who may bring their action within ten years after the expiration of their disability — can call his title in question. He can stand on his adverse possession as fully as if he had always held the undisputed title of record.

The decisions of the courts have determined the character of the possession which will thus bar the right of the former owner to recover real property. It must be an open, visible, continuous and exclusive possession, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but adversely to all titles and all claimants. In the present cases the adverse possession of the grantors of the complainants sufficient to bar the right of previous owners, is abundantly established within the most strict definition of that term.

The objection of the defendants to the jurisdiction of a court of equity in this case arises from confounding it with a bill of peace and an ordinary bill *quia timet*, to neither of which class does it belong, nor is it governed by the same principles. Bills of peace are of two kinds: First, those

which are brought to establish a right claimed by the plaintiff, but controverted by numerous parties having distinct interests originating in a common source. A right of fishery asserted by one party and controverted by numerous riparian proprietors on the river, is an instance given by Story where such a bill will lie. In such cases a court of equity will interfere and bring all the claimants before it in one proceeding to avoid a multiplicity of suits. A separate action at law with a single claimant would determine nothing beyond the respective rights of the parties as against each other, and such a contest with each claimant might lead to interminable litigation. To put at rest the controversy and determine the extent of the rights of the claimants of distinct interests in a common subject the bill lies, which is thus essentially one for peace. Second: bills of peace of the other kind lie where the right of the plaintiff to real property has been unsuccessfully assailed in different actions, and is liable to further actions of the same character, and are brought to put an end to the controversy. " The equity of the plaintiff in such cases arose," as we said in *Holland* v. *Challen*, 110 U. S. 15, '19, " from the protracted litigation for the possession of the property which the action of ejectment at common law permitted. That action being founded upon a fictitious demise, between fictitious parties, a recovery in one action constituted no bar to another similar action or to any number of such actions. A change in the date of the alleged demise was sufficient to support a new action. Thus the party in possession, though successful in every instance, might be harassed and vexed, if not ruined, by a litigation constantly renewed. To put an end to such litigation and give repose to the successful party, courts of equity interfered and closed the controversy. To entitle the plaintiff to relief in such cases the concurrence of three particulars was essential: He must have been in possession of the property, he must have been disturbed in its possession by repeated actions at law, and he must have established his right by successive judgments in his favor. Upon these facts appearing, the court would interpose and grant a perpetual injunction to quiet the possession of the plaintiff against any further

litigation from the same source. It was only in this way that adequate relief could be afforded against vexatious litigation and the irreparable mischief which it entailed. Adams on Equity, 202; Pomeroy's Equity Jurisprudence, § 248; *Stark* v. *Starrs*, 6 Wall. 402; *Curtis* v. *Sutter*, 15 Cal. 259; *Shepley* v. *Rangeley*, 2 Ware, 242; *Devonsher* v. *Newenham*, 2 Schoales & Lef. 199." It is only where bills of peace of this kind — more commonly designated as bills to remove a cloud on title and quiet the possession to real property — are brought, that proof of the complainant's actual possession is necessary to maintain the suit. *Frost* v. *Spitley*, 121 U. S. 552, 556.

There is no controversy such as here stated in the present case. The title of the complainants is not controverted by the defendants, nor is it assailed by any actions for the possession of the property, and this is not a suit to put an end to any litigation of the kind. It is a suit to establish the title of the complainants as matter of record, that is, by a judicial determination of its validity, and to enjoin the assertion by the defendants of a title to the same property from the former owners, which has been lost by the adverse possession of the parties through whom the complainants claim. The title by adverse possession, of course, rests on the recollection of witnesses, and, by a judicial determination of its validity against any claim under the former owners, record evidence will be substituted in its place. Embarrassments in the use of the property by the present owners will be thus removed. Actual possession of the property by the complainants is not essential to maintain a suit to obtain in this way record evidence of their title to which they can refer in their efforts to dispose of the property.

The difference between this case and an ordinary bill *quia timet* is equally marked. A bill *quia timet* is generally brought to prevent future litigation as to property by removing existing causes of controversy as to its title. There is no controversy here as to the title of the complainants. The adverse possession of the parties, through whom they claim, was complete, within the most exacting judicial definition of the term. It is now well settled that by adverse possession for the period

designated by the statute, not only is the remedy of the former owner gone, but his title has passed to the occupant, so that the latter can maintain ejectment for the possession against such former owner should he intrude upon the premises.   In several of the States this doctrine has become a positive rule, by their statutes of limitations declaring that uninterrupted possession for the period designated to bar an action for the recovery of land shall, of itself, constitute a complete title. *Leffingwell* v. *Warren*, 2 Black, 599 ; *Campbell* v. *Holt*, 115 U. S. 620, 623.

" As a general doctrine," says Angell in his treatise on limitations, " it has too long been established to be now in the least degree controverted that what the law deems a perfect possession, if continued without interruption during the whole period which is prescribed by the statute for the enforcement of the right of entry, is evidence of a fee.   Independently of positive or statute law, the possession supposes an acquiescence in all persons claiming an adverse interest ; and upon this acquiescence is founded the presumption of the existence of some substantial reason, (though perhaps not known,) for which the claim of an adverse interest was forborne.   Not only every legal presumption, but every consideration of public policy, requires that this evidence of right should be taken to be of very strong, if not of conclusive force."

As the complainants have the legal right to the premises in controversy, and as no parties deriving title from the former owners can contest that title with them, there does not seem to be any just reason why the relief prayed should not be granted.   Such relief is among the remedies often administered by a court of equity.   It is a part of its ordinary jurisdiction to perfect and complete the means by which the right, estate or interest of parties, that is, their title, may be proved or secured, or to remove obstacles which hinder its enjoyment. (Pomeroy's Equity Jurisprudence, vol. 1, sec. 171.)   The form of the remedy will vary according to the particular circumstances of each case.   " It is absolutely impossible," says Pomeroy, in his treatise, " to enumerate all the special kinds of relief which may be granted, or to place any bounds to the

power of the courts in shaping the relief in accordance with the circumstances of particular cases. As the nature and incidents of proprietary rights and interests, and of the circumstances attending them, and of the relations arising from them, are practically unlimited, so are the kinds and forms of specific relief applicable to these circumstances and relations."

In *Blight* v. *Banks*, 6 T. B. Monroe, 192, 194, a bill was filed by the complainant to supply the want of certain records or conveyances, under which he claimed title, said to have been executed and lost. A patent had been issued by the Commonwealth of Virginia for a large amount of property, which, by various intermediate conveyances, had become vested in the complainant. These conveyances had not been recorded, and on that ground the complainant alleged that his title was in jeopardy from creditors and innocent purchasers; that with great difficulty any title could be established at law, because the conveyances could not be given in evidence without parol proof; and that some of the witnesses were dead, and some of the original conveyances were lost and could not be found. His prayer was that his title might be rendered complete as a recorded title by the decree of the chancellor. The first question made in the case by the defendant was as to the jurisdiction of the court. It was contended that such omissions in completing a defective title were generally the fault of the grantees, and that equity would not sustain a bill for that purpose. But the Court of Appeals of Kentucky replied that it could not doubt the propriety of the interference of the chancellor in such case. "Equity," said the court, "will frequently interfere to remove difficulties in land titles, where a party cannot proceed without difficulty at law; when the conveyances are lost, or in the possession of the opposite party; or where the parties are numerous, and the proof hard of access; and in many such cases it will lighten the burden, and settle many controversies, and bring them into a small scope. And where the title is purely legal, for such and similar causes to those we have enumerated, equity has carved out a branch of jurisdiction, and a class of bills termed in the books ejectment bills, in which not only the title is made clear,

but the possession decreed also. No reason is perceived by us why the present case is not within the spirit of these cases. The difficulties in an unrecorded title, especially if it is derived through a long chain of conveyances, are familiar to our courts in this country. The danger to which the title is exposed from two classes of persons, creditors and subsequent purchasers, is often great and the facilities afforded from a title which can be read in evidence without other proof than the authentication annexed, are felt by every one who has to bring his title into court for attack or defence, and the present case will furnish a good comment on the propriety of the interference of the chancellor." The court, therefore, decreed the relief prayed. On a petition for a rehearing it reviewed its former opinion, the main point of which was the jurisdiction of the court of equity over the bill, and said:

"It is true that bills to make legal titles which are valid against all the world, except two descriptions of persons, recorded titles, and thus to protect them from creditors and innocent purchasers, have not been frequent. But if such bills cannot be allowed under one state of conveyances, it must certainly be said that there is a defect of justice in our country. A court of common law can give no relief in such a case, and if equity cannot do it then is the case a hopeless one. If, however, the principles which govern courts of equity are examined it will be found that there are many circumstances in this case, independent of defective conveyances, which sustain the jurisdiction," pp. 220, 221. (See also *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417, 449.)

In *Hord* v. *Baugh*, 7 Humph. 576, 578, a bill was filed by the complainant asking the aid of a court of chancery to set up a deed of bargain and sale, which was lost or destroyed before registration, the bargainor having died without executing another. The chancellor below dismissed the bill upon the ground that the bargainor having once conveyed the land, had parted with all his interest therein, and that the court had no jurisdiction of such a case. But the Supreme Court of Tennessee thought the chancellor erred, saying: "The loss of the deed is a casualty seriously endangering the complain-

ant's title, as he can maintain no action of ejectment without
it.   He then certainly must have a right to ask the aid of a
court of chancery in his case, either by having the legal title
vested in him as against the bargainor and his representatives,
or by having the deed set up and established as in all other
cases of lost deeds.   The complainant may have his decree for
either or both of these remedies."

In *Montgomery* v. *Kerr*, 6 Coldwell, 199, the same court
sustained a bill and established the complainant's title where
a deed of the property had been lost.   The decree was that
the complainant was entitled, by virtue of and under his deed,
to hold the premises in fee simple, and that the defendant
had no right, title or interest therein.

In *Bohart* v. *Chamberlain*, 99 Missouri, 622, 631, the proof
showed that a deed of trust which had been executed by de-
fendant to the plaintiff had been subsequently lost without
being recorded.   The court on being satisfied of the correct-
ness of the finding of the lower court to this effect, said : " No
doubt is entertained that a court of equity would have juris-
diction to afford the relief prayed for in the petition.   One
of the most common interpositions of equity is in the case of
lost deeds and instruments.   A court of equity in case of
the loss of an instrument which affects the title or affords a
security will direct a reconveyance to be made : citing *Stokoe*
v. *Robson*, 19 Ves. 385; 1 Story's Equity Jur. secs. 81, 84;
*Lawrence* v. *Lawrence*, 42 N. H. 109; 1 Mad. Ch. 24; Fon-
blanque's Equity, ch. 1, sec. 3.   And the court added that
" under the authorities cited the lower court might have
directed a reëxecution of the deed of trust ; but, as its powers
were flexible, it could accomplish the same object by a declar-
atory decree, establishing the existence of the deed in ques-
tion.   2 Pomeroy's Eq. sec. 827 ; *Garrett* v. *Lynch*, 45 Alabama,
204 ; 1 Pomeroy's Eq. secs. 171, 429."

Many other authorities to the same purport might be cited.
They are only illustrative of the remedies afforded by courts
of equity to remove difficulties in the way of owners of prop-
erty using and enjoying it fully, when, from causes beyond
their control, such use and enjoyment are obstructed.   The

form of relief will always be adapted to the obstacles to be removed. The flexibility of decrees of a court of equity will enable it to meet every emergency. Here the embarrassments to the complainants in the use and enjoyment of their property are obvious and insuperable except by relief through that court. No existing rights of the defendants will be impaired by granting what is prayed, and the rights of the complainants will be placed in a condition to be available. The same principle which leads a court of equity upon proper proof to establish by its decree the existence of a lost deed, and thus make it a matter of record, must justify it upon like proof to declare by its decree the validity of a title resting in the recollection of witnesses, and thus make the evidence of the title a matter of record. It is, therefore,

*Ordered that the decree of the court below be reversed, and the cause remanded to that court with directions to enter a decree declaring the title of the complainants to the premises described in their complaint, by adverse possession of the parties through whom they claim, to be complete, and that the defendants be enjoined from asserting title to the said premises through their former owner. Each party to pay his own costs.*