# WALTER v. SLATER.

EQUITY JURISDICTION; TRUST AND TRUSTEES; EJECTMENT.

1. It is beyond the power of a court of equity in its decree in a partition suit, for purposes of convenience and by consent of the parties, however numerous, to vest the title of a portion of the real estate involved in strangers to the suit as trustees, with power to bring ejectment suits and enforce compromises; and a title so acquired will not support an action of ejectment.
2. There is nothing in the act of Congress of May 8, 1876 (19 Stat. 213), which grants any such power to the Supreme Court of the District of Columbia holding an equity term.

No. 338. Submitted January 23, 1895. Decided February 6, 1895.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the trial court in an action of ejectment. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in ejectment instituted by the appellants, John H. Walter and Franklin H. Mackey, as plaintiffs in the court below, against the appellee, John G. Slater, as defendant, to recover a piece of land in the city of Washington, designated as lot No. 8, in square No. 1108. Under instruction from the court, the jury rendered a verdict for the defendant; and to review that instruction the present appeal has been prosecuted.

The plaintiffs in their declaration describe themselves as trustees, and the defendant is also described therein as a trustee. But, as the verdict was directed on the testimony of the plaintiffs, without any proof on the part of the defendant, it does not appear what trust the latter held. The plaintiffs, while suing him as trustee, did not deem it incumbent upon them to show why they did so.

The testimony adduced by the plaintiffs, and stated in the bill of exceptions, showed the title, so far as they were concerned, to stand as follows:

Abraham Young was the original proprietor, and received this lot, with other property, in the division with the United States. He died intestate, about the year 1800, leaving six children as his heirs at law. Proceedings for the partition of his estate were instituted in the High Court of Chancery of Maryland, and this lot, among others, was assigned in severalty to one of his sons, Richard Young, to whom it was confirmed by decree of the court on January 15, 1801.

Richard Young died on July 13, 1860, having by his last will devised part of his estate to his wife and the residue to his five children. If he was then the owner of the lot mentioned in the declaration, which is denied by the appellee, it was included in the devise of the residue to the children.

In December of 1886 some of the descendants of Richard Young executed conveyances of their supposed interest in this and other property to John H. Walter and Bartow L. Walker, who thereby were supposed to have become tenants in common in certain proportions with other descendants of said Richard Young.

In October, 1877, Walter, Walker, and certain of the descendants of Richard Young who joined with them, filed a bill in equity in the Supreme Court of the District of Columbia against others of the same descendants for a partition of a part of his estate of which they claimed to be in possession, and for the appointment of a trustee " with authority to sell the title of the parties to the cause to such parcels of real estate as were in adverse occupancy at public or private sale upon the most advantageous terms for all concerned which could be secured, and with the authority to bring suits and effect compromises, subject to the approval of the court." This was the prayer of the bill; and in the body

of the bill it was stated that all the real estate previously therein described was in the possession of the parties to the cause, excepting certain specified lots, including the lot claimed in this suit; and these were stated to be " in adverse occupancy by tax or other defective titles." Commissioners were appointed; and these commissioners made allotments in severalty of the property of which the parties claimed to be in possession as tenants in common. On April 4, 1888, a decree was passed in the cause ratifying the action of the commissioners, and, with regard to the property stated to have been held in adverse possession, appointing John H. Walter and Guion Miller trustees, " with authority to bring such suits as may be necessary to assert the rights of the parties to this cause in and to said real estate (here the lots are enumerated); to make such public and private sales and effect such compromises and make such conveyances as may be approved by the court; and for these purposes the said trustees are vested with all the title of the parties to this cause in the said real estate."

Subsequently, on February 16, 1889, another bill in equity was filed in the same court by some of the descendants of Richard Young who had joined in the conveyances to Walter and Walker, for the purpose of rescinding the transaction on the ground of fraud; with the result that their contention prevailed, and that a decree was passed on July 19, 1892, to the effect that the conveyances were fraudulent and void as to the complainants, and an accounting was ordered. By the same decree Franklin H. Mackey was substituted, in place of Guion Miller, who had asked to be relieved, as trustee with John H. Walter to carry into effect the purposes of the decree of April 4, 1888, with reference to the property held in adverse possession. Thereupon, on March 6, 1893, Walter and Mackey, as trustees, claiming to act under the decree of the court of equity of April 4, 1888, instituted this suit.

At the trial the plaintiffs proved the facts hereinbefore

stated, and also offered evidence tending to show that the defendant was in possession of the property mentioned at the time of the institution of the suit. During the progress of the trial it became necessary for the plaintiffs to prove the relationship of the descendants of Richard Young; and Lucy T. Davis, a granddaughter of Richard Young, was called for the purpose. Having testified thereto, she was asked, upon cross-examination, whether Richard Young or his descendants had ever been in possession of the property in suit, or paid taxes on it, or exercised any acts of owner-ship over it. To this question she answered that, in so far as she knew, none of them had ever been in possession, or had ever paid any taxes on the property, or had ever exer-cised any acts of ownership over it. To the question and answer the plaintiffs objected, mainly on the ground that the question was not legitimate cross-examination. It was ad-mitted, however, by the court, and this ruling is assigned by the plaintiffs as error.

Upon the conclusion of the plaintiffs' testimony, counsel for defendant, upon the ground that the equity suits offered in evidence were insufficient to vest title in the plaintiffs, and that upon the evidence plaintiffs were not entitled to re-cover, moved the court for an instruction to the jury to return a verdict for the defendant. And this instruction the court gave, and verdict and judgment were rendered accordingly. This action of the court is also assigned as error by the plain-tiffs, who have prosecuted the present appeal to procure a reversal of the judgment.

*Mr. Franklin H. Mackey* for the appellants.

*Mr. J. J. Darlington* for the appellee.

, Mr. Justice Morris delivered the opinion of the Court:

The principal question in this case is, whether a court of equity, for the convenience merely of the parties in interest, has jurisdiction to appoint trustees to institute suits in eject-

ment on behalf of persons who are fully competent to sue for themselves against persons in adverse possession, with authority to sell the interest of the parties and to make compromises and conveyances, and for those purposes to vest in the trustees of its own appointment the title of the parties in interest. And this question we have no hesitation whatever in answering in the negative.

It would seem to be an elementary proposition of equity jurisprudence that a court of equity has no power to appoint a trustee to perform a trust unless there is a trust in existence to be performed or enforced. The province of a court of equity is to enforce trusts, not to create them ; and it has no power to appoint trustees unless there is a duty to be performed which otherwise would fail of effect. The very definition of a trustee necessarily implies this; for he is only a person to whom a trust is committed, and the trust, therefore, cannot be created by the creation of a trustee.

Now, we fail to find in this case any trust for which the appointment of a trustee was either necessary or proper. The equity suit instituted between the parties represented as being interested in the estate derived from Richard Young, and which resulted in the decree of April 4, 1888, had two purposes—one, the partition of so much of that estate as was in the possession of the parties ; and the other, the recovery, by suit or compromise, of so much of it as was in adverse possession. The first was legitimate ; the second was entirely beyond the jurisdiction of a court of equity. Apart from the impropriety of a court of equity lending itself to the conduct of suits at law apparently vexatious— for it does not appear, as it should have appeared if it were the fact, that the adverse right sought to be attacked or overthrown had not ripened into indefeasible titles—it is not competent for a court of equity to appoint a trustee to institute suits in ejectment, merely because the parties so desire, and because, on account of their great number, it is more convenient for them to have a trustee for the purpose. We

are not aware that the convenience of parties has ever constituted a ground for the intervention of a court of equity. It was competent for the parties to institute such suits themselves in their own names; and if their number was too great for convenience in the prosecution of such suits, which is not apparent, they had a ready means in their own hands for the avoidance of the difficulty. The assistance of a court of equity cannot be invoked for any such purpose. It has no jurisdiction in the premises.

The decree of April 4, 1888, went beyond even the prayer of the bill in the case. The bill merely sought to have trustees appointed to sell the rights of the parties and to bring suits; the decree assumed not only to appoint trustees, but to vest in these trustees the title of the parties to the cause. But this is a matter of minor importance, inasmuch as, in our opinion, it would have made no difference if the bill had specifically sought to vest the title.

Counsel for the appellants have argued this cause as though the question in controversy were, whether it is competent for a court of equity in a suit for partition to vest title in severalty by its decree, independently of conveyances by the parties releasing to each other, or of an order in the decree that they should execute such conveyances. We do not understand that to be the question. We understand the question to be one very different from that—not whether the court of equity can vest in parties to a suit in partition, who have already a title in common, a title in severalty; but whether for their benefit and convenience they can wholly divest their title and vest it in strangers as trustees to bring suits and effect compromises for them. The powers of a court of equity may be ample for the one purpose; we hold that they do not exist for the other.

The case of *Sharon* v. *Tucker*, 144 U. S. 533, has been cited to show the extent of the powers of a court of equity in this regard. There, after citation of several authorities to show how far courts of equity will go to aid owners of property,

it was said : " Many other authorities to the same purport may be cited. They are only illustrative of the remedies afforded by courts of equity to remove difficulties in the way of owners of property using and enjoying it fully, when from causes beyond their control such use and enjoyment are obstructed. The form of relief will always be adapted to the obstacles to be removed. The flexibility of decrees of a court of equity will enable it to meet every emergency. Here the embarrassments to the complainants in the use and enjoyment of their property are obvious and irreparable except by relief through that court."

That suit was one instituted by the holder of a possessory title, that had ripened, by force of the Statute of Limitations, into an indefeasible title, and who was in possession of the property, to establish that title as a matter of record, and to enjoin the defendants, who were the owners of what is called the record title, from asserting that title as heirs of the former owner. The decision in that case is a beneficent enlargement of a well known and recognized jurisdiction of a court of equity to quiet titles. The difference between it and the present case is obvious. Most assuredly the great and able jurist, who delivered the opinion of the Supreme Court of the United States in that case, did not intend to intimate by his language as to the flexibility of the decrees of a court of equity, that that court may do anything that it is asked to do for the convenience of parties; and the opinion is not open to any such construction. On the contrary, the decision is expressly based upon the ground that the complainants in that case could have no relief to remove their embarrassment except through a court of equity; while in the case of which we are treating there is not the slightest pretence that there was not the most complete and adequate remedy at law.

It is also argued that, under the act of Congress of May 8, 1876 (19 Stat. 213), whereby courts of equity were empowered to decree sales of real estate for the purpose of partition, when

specific partition was impracticable or injurious to the interest of the parties, they were authorized, in addition to the powers therein conferred, to exercise such powers as are or may be conferred by virtue of the general equity jurisdiction of the courts; and that, therefore, in addition to decreeing the specific partition that was decreed by the decree of April 4, 1888, the Supreme Court of the District of Columbia, sitting as a court of equity, was authorized to give the additional relief that was therein given.    But plainly this contention is directly in the face of the statute, not in accordance with it.    The provision of the statute is that, in suits for partition, the court of equity may exercise its general equity jurisdiction, as occasion may require.    But what was done here was not within the general equity jurisdiction of a court of equity, or within the jurisdiction of equity at all.    As we have already said, and as seems to us to be perfectly clear, there is no jurisdiction in equity for the appointment of trustees merely to bring suits in ejectment or to negotiate or enforce compromises.

We are satisfied that the decree of April 4, 1888, by which it was sought to appoint the plaintiffs in this cause as trustees and to vest in them the legal title to the property in controversy, was in that regard a nullity, and did not in law vest in them the legal title to such property.    And, of course, it follows that, if they had not the legal title in them, they cannot recover in this suit, and that the court below was right in so holding.

*The judgment of the court below is therefore affirmed, with costs.*