## HUMBLE OIL & REFINING CO. v. STATE MINERAL BOARD et al.

### No. 165.

District Court, W. D. Louisiana, Lake Charles Division.

March 1, 1940.

Tinsley Gilmer, of Lake Charles, La., and Milling, Godchaux, Saal & Milling, of New Orleans, La., for plaintiff.

David M. Ellison, Atty. Gen. for State of Louisiana, and Lessley P. Gardiner, Jos. A. Loret, and Wade O. Martin, Jr., Assts. to Atty. Gen., for defendants.

DAWKINS, District Judge.

Plaintiff brought this suit against the State Mineral Board, its Chairman (Governor of the State), the individual members thereof, the Attorney General of the State and the Cameron Parish School Board for a declaratory judgment sustaining the validity of a mineral lease covering certain sixteenth sections of land in the Parish of Cameron, Louisiana; and in the alternative, prayed that a voluntary cancellation of an earlier lease upon a part of the said property, situated in Section 16, Township 12 S. R. 6 W., be set aside and the said first lease be restored to the full force and effect which it had enjoyed before the cancellation. In substance, the petition alleges that the action is brought under the constitution and laws of the United States, "particularly the Treaty Ceding Louisiana, entered into between the French Republic and the United States, concluded April 30, 1803, 8 Stat. 200, and the Act of Congress approved April 21, 1806" (2 Stats. 391 Chap. 39) and Act of Congress approved

March 3, 1811 (2 Stats. 664, Chap. 46), and Act of Congress approved February 20, 1811 (2 Stats. 641, Chap. 21), the Act of Congress approved April 8, 1812 (2 Stats. 701, Chap. 50), and Act of Congress approved April 14, 1812 (2 Stats. 708, Chap. 57), and Act of Congress approved April 23, 1812 (37 Stats. 90, Chap. 88), and Section 10 of Article I, the third paragraph of Article VI, and the 14th Amendment to the Constitution of the United States"; that the Act of April 21, 1806, authorized the sale by the President of lands embraced in the Louisiana Purchase "with the exception of Section Sixteen (16), which shall be reserved in each township for the support of schools within the same"; that Louisiana was admitted into the Union by the Acts of Congress approved February 20, 1811, April 8, 1812, April 14, 1812, "on condition, among others, that the people of the said territory included in the said state would agree and declare to forever disclaim all right or title to the waste or unappropriated lands lying within the same and that such lands should be and remain at the sole disposition of the United States"; that the First Constitutional Assembly of the State accepted and ratified said condition; that, therefore, sixteenth sections "were not included in those which remained vested in the United States, but the title to said sections was vested in the State of Louisiana, as trustee, to be administered by said State, for the purposes provided in said two Acts of Congress"; that the lands involved in this suit were in the class last mentioned; that the lands in Cameron Parish were duly surveyed under authority of Acts of Congress, including the sixteenth sections in each township; that by the Act approved April 23, 1912, Congress confirmed "to the state, for the benefit of public schools (as though the official surveys had been regularly extended over such townships) the unsurveyed lands in the State shown by official protractions of the Government surveys theretofore made, to be embraced within Sections numbered 16, and which lay in the same townships as lands certified to or patented to the State of Louisiana under the Swamp Land Grants" of 1849 and 1850.

Further, that, the State by constitutional provisions and legislative acts had, "provided for the creation of a system of public education, included in which are the free public schools of the State located in each of the Parishes * * * under the direct supervision of boards known as parish school boards * * * maintained from public school funds, included in which are revenues derived from lands donated to the State by the United States for school purposes"; that the said sixteenth sections had by the constitution and laws of the state been placed "under the jurisdiction and control of the parish school boards" with authority "to grant mineral leases" the proceeds thereof "to be credited to the current school funds of the * * * parish school board."

Further, that by an amendment adopted November 6, 1934 (Act 76 of 1934), to Section 14 of Article XII of the State Constitution, specific provision was made for "funds for the support of the public schools * * * from the sources therein provided and apportioned to the public school boards"; that Section 15 of said Article XII of the State Constitution was also amended on November 6, 1934 (Act 75 of 1934) "so as to provide that parish funds for the support of the public schools of elementary and secondary grades should be derived from the sources, and controlled and managed as therein provided; it being provided that the parish school boards should place in the general parish school fund all revenues received for the general maintenance of the public schools from state and parish constitutional and statutory sources (with the exception of certain special taxes therein mentioned) such funds not to be subdivided, apportioned or separated in any manner whatsoever, but used to cover the cost of the current operations of the public elementary and secondary schools within the parish and under the control of the parish school board."

Further, that pursuant to the Constitution and statutes of the State, particularly Act 100 of 1922, the Cameron Parish School Board on February 5, 1934, had granted to Sidney W. Sweeney, predecessor in title to plaintiff, a mineral lease upon the sixteenth sections involved in this suit, and which, in turn, had been assigned to plaintiff on June 29, 1934; and that on December 3, 1934, said lease was amended in certain particulars by an act executed by the plaintiff and the said board.

Further, that on September 8, 1938, the said School Board executed to and with John B. Daigle a second mineral lease covering the same property; that the said Daigle lease was, on October 31, 1938, also

assigned to plaintiff; that plaintiff in lieu of drilling had paid all of the rentals under the lease of February 5, 1934 up to and including February 5, 1939, when according to its terms, it would have otherwise expired, in the absence of drilling operations; and that on January 12, 1939, plaintiff had executed and delivered to the School Board "a release and relinquishment of its rights under the lease of February 5, 1934", in the belief that it had been superseded by the lease of the School Board to Daigle of September 6, 1938 and which as stated, had been assigned to plaintiff.

Further, that on January 18, 1939, plaintiff had commenced operations in section 16 of Township 12, S. R. 6 W., "described in lease of February 5, 1934 and in the lease of September 6, 1938", and completed a producing well thereon February 20, 1939; that a second well in the same section was commenced on February 23rd and completed as a producer April 2, 1939; that plaintiff has at all times remained in possession and has continued to pay the royalties on production to the School Board; and that the rentals on the lands covered by the Daigle lease of September 6, 1938, have also been paid to the said School Board.

Further, that, notwithstanding the facts above set forth, " * * * an actual controversy exists herein between plaintiff on the one hand and the Mineral Board, its members, and David M. Ellison, Attorney General, as attorney for the Mineral Board, on the other hand, in that plaintiff is informed, believes and therefore avers that on the 4th day of March, 1939, David M. Ellison, Attorney General of the State of Louisiana, who, under the laws of said State, is attorney for the Mineral Board, rendered an opinion to the effect that Act 93 of 1936, as amended by Act 80 of 1938, had the effect of repealing Section 30 of Act 100 of 1922, (which authorized parish school boards to grant mineral leases) and of vesting in the Mineral Board the jurisdiction and control over the lands situated in sections numbered 16, for the purpose of granting mineral leases thereon, and that the Mineral Board was the only body authorized under the laws of the State of Louisiana to grant mineral leases bearing upon and affecting such lands in said sections numbered 16; and, further, that all such mineral leases were to be granted in accordance with and in the manner provided by said Act 93 of 1936, as amended

by Act 80 of 1938, all of which will appear by reference to a copy of said opinion hereto attached and marked Exhibit 'G'; that subsequently, on July 26, 1939, the Assistant Attorney General reaffirmed and reiterated said ruling, as will appear from a copy thereof hereto attached, made a part hereof and marked Exhibit 'H'.

"XXXII. Plaintiff is further informed, believes and therefore avers that the Mineral Board and its members intend to claim the benefit of the opinion of the Attorney General, who is the attorney for said Board, as set forth in the next preceding paragraph hereon, and that the Mineral Board and its members now claim and assert and will continue to claim and assert that subsequent to the effective date of Act 93 of 1936, as well as subsequent to the effective date of Act 80 of 1938, the sole right, power and authority to grant mineral leases upon lands embraced within sections numbered 16 situated in the townships described in the Leases of February 3, 1934 and September 6, 1938, was vested in the Mineral Board, and that said Board and its members, and the Attorney General, as attorney for the Mineral Board, claim and assert, and intend to continue to claim and asserts, that the lease of September 6, 1938 was null, void, and of no effect, and that inasmuch as the Lease of February 5, 1934 has been released as aforesaid, plaintiff enjoys no right or interest in, to or in respect of any of the lands embraced in the sections numbered 16 described in the aforesaid two mineral leases, and more particularly no right or interest in, to, or in respect of, the lands embraced in Section 16 of T. 12 S., R. 6 W. as to which plaintiff is now in actual, physical, corporeal and notorious possession, and upon which plaintiff has drilled its two oil wells as aforesaid, and is now producing oil and gas therefrom, and paying royalties to the School Board as above provided.

"XXXIII. The two aforesaid opinions of the Attorney General and the pretended claims and assertions of right by the Mineral Board and its members, and the said Attorney General, as hereinabove set forth, are arbitrary, capricious, erroneous, illegal null and void, are in direct violation of the terms and provisions of the aforesaid Treaty of Cession, of the Acts of Congress reserving said sections numbered 16 to the public schools and admitting the State of Louisiana into the Union, and are also in direct violation of Act 93 of 1936 and Act

80 of 1938, and the 14th Amendment to the Constitution of the United States, as well as the constitutional and statutory provisions of the State of Louisiana, and have the effect of arbitrarily and capriciously beclouding plaintiff's title in and under the aforesaid mineral lease of September 6, 1938 as hereinafter appears.

"XXXIV. By Act 93 of the Louisiana Legislature for the year 1936, there was created the Mineral Board, as a corporate body, possessing the powers granted under said act, as well as the usual powers incident to corporations, with the power to sue and be sued; and said statute did vest said Mineral Board with full authority to lease any lands belonging to the State or the title of which is in the public, including rights of way, road beds, lake and river beds, and other bottoms, lands adjudicated to the State at tax sale, and any other lands and water bottoms by whatever title acquired, for the development thereof and the production therefrom of oil, gas, coal, salt, sulphur, lignite and other minerals under the terms and conditions thereafter in said act set forth. That said statute did provided the manner and method of granting mineral leases and did provide that said Board should have full supervision of said leases granted by the State, 'now in effect or hereafter entered into', in order that it might determine whether the terms and conditions thereof were being fully complied with, and generally should have authority to take any lawful action for the protection of the interests of the State, and was vested with authority to institute any action to annul any such leases upon any legal ground whatsoever. Said statute did provide for certain minimum royalties for which all lands should be leased; and did provide (Section 13) that any excess royalty over and above such minimum royalty 'is hereby dedicated' to the Louisiana State University, the payment of old age assistance and other social security benefits, the State Hospital Board, and the servicing of the State debt. Section 20 did provide that all funds belonging to the State under the terms of valid existing mineral leases and under the terms of leases granted under the Act, 'shall be collected by and paid to the Register of the State Land Office, and shall be deposited in the State Treasury to the general fund, in accordance with law.'"

Further, that by Act No. 80 of the Legislature of 1938, Sections 4, 7 and 20 of Act 93 of 1936 were amended so as to provide that all monies realized from the sale of leasing of lands for mineral purposes under which the said Mineral Board had jurisdiction, should be paid into the general fund, to be disbursed as directed by the Legislature, except as to those lands belonging to levee boards, which were required to "be paid to the Register of the State Land Office and * * * deposited * * * in the State Treasury" to the credit of "the Levee Board which is the owner of the land"; and except ten per cent (10%) "of the minimum royalties * * * shall be placed by the State Treasurer * * * in a special fund to the credit of the Parish in which the production is had * * * subject to withdrawal by the Louisiana Highway Commission * * * for the building and construction of concrete roads and bridges in said Parish. * * *"

Further, that under the law, the proceeds of the lands and mineral leases arising from sixteenth sections were required to be "paid into the Parish School Board fund"; that the general fund of the state is not dedicated to school purposes, but "for the general purposes of the state" and only such portions to the schools as are specially appropriated therefor by the Legislature.

For these reasons, plaintiff alleges that Act 93 of 1936, as amended by Act 80 of 1938, "does not apply and was never intended to apply to lands embracing" sixteenth sections and therefore the said Mineral Board has no jurisdiction over the same. In the alternative, if it should be found that said Acts were intended to take away from the parish school boards and vest the jurisdiction in the State Mineral Board, then to that extent, the same were unconstitutional, null and void for the following reasons:

(a) That it conflicts with the Treaty of Cession, proclaimed October 21, 1803, and the Acts of Congress referred to in the earlier part of this opinion, and constitutes an attempt to divert the said sixteenth sections, their proceeds and revenues arising from mineral leases thereon, "from the purposes for which they were intended by the said statutes * * * under Article VI of the Constitution of the United States * * * the supreme law of the land"; and

(b) They violate sections 1, 10, 11, 14 and 15 of Article XII of the State Constitution of 1921 and amendments thereto, and "that said statutes (Acts of the

Legislature Nos. 93 of 1936 and 80 of 1938) attempt to divest Parish School Boards "created in accordance with provisions of said constitution, of jurisdiction and authority over lands embraced in said sixteenth sections * * *."

Further, that on information and belief, it had been the view of the said Mineral Board, its members and of the Attorney General of the State, as expressed by the latter in official opinions that the said Acts did not give it jurisdiction over sixteenth sections, but that they had remained under the control of Parish School Boards; and that recently, this position had been changed, as a consequence of the opinions thereafter rendered by the Attorney General's office quoted in the petition. Further, that plaintiff and others dealing with the school board had therefore been lead to believe they could lawfully buy or lease such lands from the said school boards, but if this later construction is to prevail, "it will destroy plaintiff's rights in the aforesaid leases of September 6, 1938, and will impair the obligations of the aforesaid contracts entered into by the school board prior to said reversal, all in violation of Section 10, Article I of the Constitution of the United States * * * constituting a taking of plaintiff's property without due process * * * and will deny to plaintiff the equal protection of the law in violation of the 14th Amendment to the Constitution of the United States", as well as Sections 2 and 6 of Article I and Section 15 of Article IV of the Constitution of the State of Louisiana.

In the alternative, plaintiff says that if it should be held that the said Acts of the Legislature of 1936 and 1938 do take jurisdiction and control over sixteenth sections away from the school boards, and vest it in the State Mineral Board, notwithstanding the provisions of the Constitution referred to, then the release executed January 12, 1939, by plaintiff of the lease of February 5, 1934, on the belief that the one to Daigle of September 6, 1938, was valid, was induced by error of both law and fact, was without consideration, and should be set aside and plaintiff restored to its rights under the said lease of February 5, 1934, as to Section 16, Township 12 S. R. 6 W., because it had kept the latter alive by the payment of rentals until commencing drilling in January 1939, which resulted in producing wells that have continued to produce to this day.

Further, on information and belief, plaintiff alleged "that the Mineral Board will assert and claim rights under said release of January 12, 1939, executed by plaintiff under the circumstances hereinabove set forth, and will assert that plaintiff has abandoned and relinquished all rights in and under said lease of February 5, 1934, and that plaintiff is not entitled to the benefits thereof, and the plaintiff illegally holds possession of the lands in the aforesaid Section 16, Township 12, S. R. 6 W., and the oil and other minerals produced therefrom". Article L of the Petition is as follows: L. "That, consequently, an actual controversy exists between plaintiff on the one hand, the Mineral Board, its members and David M. Ellison, Attorney General, as its attorney, on the other hand, as to whether the Release of January 12, 1939 is valid, effective and binding and whether the Lease of February 5, 1934 is now in full force and effect in so far as concerns the lands in Section 16 of T. 12 S. R. 6 W."

The prayer is for "judgment * * * decreeing and declaring that the Cameron Parish School Board was and is vested with power, authority, and jurisdiction to execute and deliver the mineral lease, dated September 6, 1938, granted by the Cameron Parish School Board to John B. Daigle, and that the said Mineral Board and the individual members thereof, defendants herein, were and are vested with no jurisdiction thereof or thereover", and that plaintiff under said lease to Daigle "holds and shall continue to hold its rights * * * and possession of Section 16, Township 12, S. R. 6 W. and the oil wells thereon, free and clear of any claims of rights of jurisdiction on the part of the said Mineral Board * * * under said lease or the lands therein described" and that said defendants "be perpetually enjoined from claiming" any rights thereto and from "interfering with the rights of plaintiff" under its said lease. In the alternative, it prays for "judgment * * * decreeing and declaring that the release and relinquishment" of January 12, 1939, "is null, void and of no effect in so far as concerns Section 16, Township 12, S. R. 6 W." and for an injunction of similar import.

Motions to dismiss have been filed by the State Attorney General and the State Mineral Board on the grounds that the suit is, in effect, one against the state, which can not be sued without its legislative consent, which has not been given, and this court

has no jurisdiction ratione personae over the state; that if the state is a necessary party, the case can not proceed without its presence, and finally "because the said complaint fails to state a claim upon which relief can be granted herein against movers."

## Opinion.

Without finding it necessary to go into the question of whether the suit is one against the state, which has not given its consent to be sued, or whether it is an indispensable party to the extent that jurisdiction could not be entertained in its absence, I am of the view that the facts stated do not show the existence of an "actual controversy." They merely show that while the view had been generally entertained that sixteenth sections were not affected by Acts 93 of 1936 and 80 of 1938, defining the power and jurisdiction of the State Mineral Board, recently the Attorney General of the State had rendered opinions, not to this plaintiff or to the State Mineral Board, but to certain District Attorneys of the State, to the effect that leases upon sixteenth sections can be granted only by said Board. Neither the Board nor anyone else has asserted any rights to or over the properties upon which plaintiff's lease rests, but the petition presents purely the abstract question as to whether, in view of the said statutes and the present opinion of the Attorney General, plaintiff has, under the facts alleged, a legal title emanating from the School Board. Plaintiff has not been disturbed in its possession, nor is the state or anyone else asserting a claim to the lease, but on the contrary the royalties are still being paid and received by the School Board from the producing wells. It is true that plaintiff would like to have the matter cleared up because of the desire to feel safe in its expenditures for further developments of the property, but until an actual controversy arises between it and someone else, either by the state demanding surrender or the payment of royalties into the general fund, or some other lessee or assignee deriving title through the Mineral Board, I can not see that the actual controversy intended by the declaratory judgment act, Jud.Code, § 274d, 28 U.S.C.A. § 400, exists. See Nashville C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Ohio Casualty Co. v. Marr, 10 Cir., 98 F.2d 973; Boggus Motor Co. v. Onderdonk, D. C., 9 F.Supp. 950.

The case can not be considered as one for the quieting of title since there is no one affirmatively asserting any adverse rights or claim to the property; nor is there any question of establishing an unwritten title by prescription or limitation, such as was involved in Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L.Ed. 532. Of course, the issue of whether the lands, in so far as legal title is concerned are owned by and can be conveyed or leased by the state, or by the School Board, exists, but neither the state nor the School Board is contesting plaintiff's rights. In such circumstances, where a question of title under a mineral lease arises, the practice has been for the lessee to exact of the lessor a bond for protection before payment, and it might be that if the School Board refuses to do this, plaintiff could decline payment, in which event the Board could sue or make such demand as would produce an actual controversy over which a court could exercise jurisdiction. It does seem, however, that this is a matter which the State, through the proper channels, should settle between the School Board and the State Mineral Board and not tie up the development of its natural resources over a question of whether it shall receive and disburse the benefits to its citizens through one agency or another.

For the reasons assigned, the motion to dismiss should be sustained.

Proper decree should be presented.