## John J. Orton, Appellant, v. George Smith.

Those only who have a clear, legal, and equitable title to land, connected with possession, have a right to claim the interference of a court of equity, to give them peace or dissipate a cloud on the title.

Therefore, where the complainant was the volunteer purchaser of a litigious claim; was the assignee of a secret equity for apparently a mere nominal consideration, and of the bare legal title for a like consideration, and this legal title assigned to him during the pendency of a suit in chancery in a State court, to ascertain the person justly entitled to it, it was error in the court below to grant to such complainant a perpetual injunction.

The courts of the United States should not entertain a bill of peace upon a title in litigation in a state court.

This was an appeal from the district court of the United States, for the district of Wisconsin.

The facts are stated in the opinion of the court.

It was argued by *Mr. Gillett* and *Mr. Lynde*, for the appellant, and *Mr. Brown*, for the appellee. There was also a brief filed on the same side by *Mr. Upham.*

The points made by the counsel were so interwoven with the facts, that they cannot be presented abstractedly.

Mr. Justice GRIER delivered the opinion of the court.

The bill, in this case, is in the nature of a " bill of peace," as authorized by the statutes of Wisconsin. Smith, the claimant below, claimed to be owner of certain lands, to which Orton claimed also to have some title. The bill prays an injunction against Orton, to prohibit him from setting up his claim, and thereby " casting a cloud" over the good legal title of complainant.

The facts of the case are somewhat complex, and its merits will be better apprehended by a succinct history of them, as elicited from the pleadings and evidence.

Hubbard had settled in Wisconsin, having escaped from his creditors, with some pecuniary means, which he thought it prudent to conceal. Hence, though he speculated in the purchase and sale of lands, the title to them was held by friends. He had contracted to sell certain lots in Milwaukie to Schram.

But Schram would not pay his money without a good legal title, or good security that it should be conveyed to him. Hubbard resided in the family of his friend Butler, and being addicted to idleness and intemperance, he confided the management of his affairs, in a great measure, to Butler. Schram would not pay his money on the security of Butler or the promise of Hubbard to obtain a title; and one Knab at length was prevailed on to enter into a bond with Butler, conditioned that a good legal title should be made to Schram for the lots. But Knab was unwilling to enter into this bond without security also. For this purpose the land in-dispute in this suit was conveyed to him in fee by one Cyrus D. Davis, who held the legal title as friend and trustee of Hubbard. This deed was put on record by Knab, who, at the same time, gave his title-bond covenanting to convey the land to Butler, when the covenants of their bond to Schram would be satisfied or released. This title-bond was not given to Davis, because he claimed no beneficial interest in the land; nor to Hubbard, because his policy required him not to appear to have any title to property; but to Butler, the friend and active agent of Hubbard. Notwithstanding the testimony of Butler, that he paid Hubbard for the land, and did not hold as secret trustee for him, the fact may be considered doubtful; and it is not necessary to decide it, in our view of the present case. Hubbard is now deceased: but in his lifetime he assigned, for the consideration of one dollar, all his interest in the land in dispute to one Gruenhagen, (under whom Smith, the complainant, claims,) by deed dated in June, 1851.

On the 22d of February, 1851, Butler assigned to Orton, the defendant, the title-bond of Knab for the consideration of $2,100. This consideration has been paid without any knowledge or notice of any secret equity in Hubbard; and the covenants of the bond to Schram being fulfilled or released, Orton filed his bill in chancery on the 6th of August, 1851, against Knab, demanding from him a conveyance of the legal title according to the exigency of his bond.

During the pendency of this bill, which would settle the legal and equitable rights of all persons having any claim to the land in dispute, the complainant, Smith, becomes the purchaser of the real or supposed secret equity of Hubbard. And not only so, but he has obtained from Knab the transfer of the legal title for a nominal consideration; thereby substituting himself in the place of Knab in the contest pending in the state court. The charge of fraud made in the bill, because Knab's title-bond was made to Butler and not to Hubbard, is not substantiated. It was a matter of indifference to Knab whether Hubbard or But-

ler held the bond. He had no concern with the private arrangements or secret trusts between them. When the condition of his bond to Schram was released, Knab was bound to convey to Butler, by the exigency of his own contract, and could not make himself a judge of the equities between Butler and Hubbard. His assignment to Smith, under the circumstances, could have no effect but to substitute Smith in his own place, under the same liabilities.

On this state of the facts the court below decreed the title to the land to be in Smith.

" And further, that the said defendant, John J. Orton, be, and hereby is, perpetually enjoined and forever barred from setting up or asserting any claim in or right to said premises, by virtue of or upon said bond and assignment. But this injunction and decree are not in any way to affect or operate against him, the said John J. Orton, in the prosecution of a bill pending in the circuit court of Milwaukie county, in this State, wherein he is complainant, and David Knab is defendant; this court not intending to enjoin a proceeding in the state court."

We think the court erred in entering such a decree. Those only who have a clear, legal, and equitable title to land connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.

The complainant in this case is the volunteer purchaser of a litigious claim; he is the assignee of a secret equity for apparently a mere nominal consideration, and of the bare legal title for a like consideration. . This legal title was improperly assigned to him, during the pendency of a suit in chancery to ascertain the person justly entitled to it.

Besides, the decree in this case demonstrates the impropriety of the interference of the court of the United States, and of its entertaining jurisdiction of a question of title then pending in the state court. It is true, if this were an ejectment in a court of law, the pendency of another ejectment between the same parties might not have afforded sufficient ground for a plea of *auter action pendent;* nor would the court have been bound, even by comity, to await the decision of the state court, or suffer the cause pending before them to be in any way affected by it. But a decree of a court of chancery, on a bill of peace, must necessarily operate by way of estoppel, as to the title of the land, and conclude all the parties to it, because it should put an end to all litigation between them. If they have suits pending in other courts, on the same question of title, they must cease. This bill acts by injunction on the party—no injunction ever goes to the court having a concurrent jurisdiction

of the question. The courts of the United States have no such power over suitors in a state court. But a decree on a bill of peace which does not put an end to litigation is a mere *brutum fulmen.* Unless the court can make a decree which it can execute, it is a sufficient reason for refusing to take cognizance of the case. It is a rule absolutely necessary to be observed by courts who have a concurrent jurisdiction, that in all cases " where the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right cannot be arrested or taken away by proceedings in another court." This rule, it is said, " has its foundation not merely in comity, but in necessity. If one may enjoin, the other may retort by injunction, and thus the parties be without remedy." See Peck *v.* Jenness, 7 How. 625; Taylor *v.* Royal Saxon, 1 Wall, 311.

If the decree in this case can be of any value whatever, let us look at the consequences which may possibly and probably will arise, in case it is enforced.

Orton, claiming as the *bonâ fide* assignee and purchaser of the title-bond given by Knab, has a bill pending in the state court to compel a transfer of the legal title. Pending this litigation, Knab assigns the legal title to a citizen of another State, who comes into the court of the United States praying an injunction against Orton from setting up his title. Suppose the state court decrees the title to be in Orton, and compels Knab and Smith, his assignee, to release the legal title to him? Now the court below has made a decree that enjoins Orton from ever setting up his title against Smith. It is true the decree protests against interference with proceedings in a state court: but unless it is construed so as to be a perfect "*felo de se,*" it must be enforced in favor of complainant somehow. When the sheriff puts Orton in possession under the decree of the state court, and expels Smith, the circuit court, by its officer, must replace Smith, or imprison Orton for a contempt. This would indeed be a humiliating spectacle. Such a disreputable collision of jurisdictions should be sedulously avoided. This can only be done by refusing to entertain a bill of peace for an injunction when the title is in litigation in a court of concurrent jurisdiction; otherwise, the result of a bill of peace may be not peace but war; and, instead of dispelling a "cloud" from the title of either party, will doubly increase the darkness and difficulty with which it was environed.

Decree of the circuit court is therefore reversed, and the bill dismissed with costs—but without prejudice.