DAVIS v. FARMER et al.

(District Court, D. Kentucky. September 29, 1894.)

BOUNDARIES—CONSTRUCTION OF SURVEY—CONFLICT BETWEEN CALLS FOR CORNER AND COURSE AND DISTANCE.

The call from the third to the fourth corner of a survey of land, made under a warrant of the state of Kentucky and afterwards carried into a patent issued by the state, was from a stake on the top of Cumberland Mountain, "thence south, 60 degrees west, 8,320 poles, to a stake near Cumberland Gap." If the course and distance be followed, it would carry the fourth corner several miles within the state of Tennessee; whereas, if the line be run following the state line along the crest of the Cumberland Mountains in a general southwesterly course, it would strike the center of the Gap at a distance of 7,934 poles. *Held*, that the words "near Cumberland Gap" should be construed to mean at or in Cumberland Gap, and that, as so construed, such natural object would govern the call for course and distance, and fix the corner at the center of the Gap.

In Equity. Suit to quiet Title.

BARR, District Judge. This is a suit to quiet the title of the complainant as against the claim of the defendants. The complainant claims a fee-simple title to a large tract of land in the counties of Harlan and Bell, in this state. The claim is based upon a patent issued by the commonwealth of Kentucky, dated September 25, 1845, to John Ledford, Noble Smith, and Henry Skidmore. The land is described thus, to wit:

"Beginning on Crank's Creek, on two beeches and two sugar trees, the beginning corner to said Smith's 1,500-acre survey; thence south, 70 degrees west, 664 poles, to three beeches, beginning corner to a 600-acre survey of said Smith; thence south, 28 degrees west, 400 poles, to a stake on the top of Cumberland Mountain; thence south, 60 degrees west, 8,320 poles, to a stake near Cumberland Gap; thence north, 55 degrees west, 8,820, to a stake; thence south, 5 degrees west, 3,150 poles, to the beginning."

It is alleged that this patent was issued under a survey made and dated March 3, 1845, by James Farmer, surveyor of Harlan county, Ky., upon a warrant, numbered 316, issued by the Harlan county court on March 3, 1845, which directed said surveyor to survey for said Ledford and Skidmore 86,000 acres of land in Harlan county. It is alleged that Ledford and Skidmore assigned to Noble Smith an undivided interest of 28,666⅔ acres in said land by a written indorse

ment on said warrant, and hence the patent was issued to Ledford, Skidmore, and Smith.

The claim of the defendants, Wm. C. Farmer, John W. Forrester, Leopold Wallack, E. B. Moore, and others, which the complainant is seeking to have quieted against, is based upon an alleged survey made same day as survey to Ledford, Skidmore, and Smith, March 3, 1845, and patented by the commonwealth of Kentucky on the 5th day of July, 1846, to said Wm. C. Farmer and Thomas Forrester, assignee, etc., and is described as bounded thus, viz.:

"Beginning at two Spanish oaks and black oak on top of Cumberland Mountain, in the Chadwell Gap, near the head waters of Martin Fork, near a cliff of rock west of the trace leading across said mountain; thence south, 71 degrees west, 140 poles, to a hickory on top of the mountain; thence south, 72 west, with the top of said mountain, 2,560 poles, to a stake near Cumberland Gap; thence north, 800 poles, to a stake; thence north, 72 east, 2,240 poles, to a stake; thence north, 540 poles, to a stake; thence north, 70 east, 960 poles, to a stake; thence south, 3 east, 1,280 poles, to a stake; thence south, 62 west, 600 poles, to the beginning—containing 12,900 acres, more or less."

This tract of land, if the line be run along the crest of Cumberland Mountains from Chadwell Gap and to the center of Cumberland Gap, will be almost entirely within the exterior lines of the 86,000-acre survey, if the center of Cumberland Gap be considered the fourth corner of that survey. There is, however, upon these assumptions, a triangular strip of land which is outside of these lines and which is not claimed by complainant in her pleadings. There are also 21 tracts of land, held by and under patents and surveys within the exterior lines of said 12,900-survey, which are senior to complainant's patent and not claimed by her.

If, however, the 86,000-acre survey and patent be located, not with the fourth corner at Cumberland Gap, but according to the distances and corners as called in the survey and patent, then about two-thirds of the 12,900-acre survey will be within the exterior boundaries of the 86,000-acre survey.

The defendants William C. Farmer and John W. Forrester have filed answers, and set up as a defense to complainant's bill that the survey of the 12,900 acres of land was made in the morning of March 3, 1845, and before the survey of the 86,000 acres of land to Skidmore, Smith, and Ledford, by said Wm. C. Farmer, who was then a deputy surveyor of Harlan county, under James Farmer, who was the surveyor of said county, under proper warrant, and that there was a parol agreement with said Skidmore, Smith, and Ledford that this prior survey should be made, and that they did not claim the land within the 12,900-acre survey. The complainant excepted to this defense, and the court sustained the exception; and it need not be noticed now, further than to state all the testimony taken by defendants to sustain this defense has been excepted to by complainant and should now be sustained and excluded from the record.

The record shows that the defendants Farmer and Forrester contracted to sell the 12,900-acre survey to one Edward B. Moon, who has filed an answer and cross-bill herein. In his answer he denies complainant's title and possession, and in his cross-bill he sets out his contract of purchase from defendants Farmer and Forrester, and

their subsequent sale to one Leopold Wallack by Farmer and Forrester, and prays for an enforcement of his contract of purchase. This cross-bill has not been prepared and need not be considered now. It appears from the record that Farmer and Forrester have conveyed all their right, title, and interest to Leopold Wallack, and that he was, at the commencement of this suit, January, 1891, and still is, the holder of the title of said Farmer and Forrester in said 12,900-acre survey. They, however, claim to be the equitable owner of said land, as Wallack has not paid the purchase money. Wallack is before the court by constructive service only.

Neither the defendants Farmer and Forrester, nor any other defendant, has sought by cross-bill or other proceeding to have the patent of September 25, 1845, to Ledford, Smith, and Skidmore, set aside and declared void, so far as it embraced the survey of 12,900 acres of land. The defendants Farmer and Forrester, do deny complainant's possession of any part of the 12,900-acre survey, and allege they have been in adverse possession, claiming under said survey and patent, for more than 45 years, and plead the statute of limitations, and they deny complainant's title.

The plea of the statute of limitations cannot be sustained, unless there has been a continued and adverse possession by the defendants or those under whom they claim for the statutory period. The patent of July, 1846, did not convey title to the 12,900-acre survey, because the commonwealth of Kentucky had already conveyed away, by the patent dated September 25, 1845, all land covered by it and not previously disposed of. The survey of the 12,900 acres on the 3d of March, 1845, if made, and the subsequent patent in 1846, might be a color of title, if the boundaries were clearly and distinctly marked, and there was an actual and adverse possession to those clearly marked boundaries. But there is no such possession proven in this case upon which to base a title by adverse possession. Indeed, it is quite clear from the testimony in the record that the alleged survey was not actually made in 1845, and that there were no marked boundaries of this tract of 12,900 acres of land as described in survey or patent at the date of either. If this survey was ever actually made and the boundaries marked, it has not been proven in this case. Wm. C. Farmer testifies in a general way that he paid taxes on this tract of land, but he does not file receipts or other evidence of the assessment and payment thereof. It is true there is some evidence of recent occupation of parts of this survey (land) by tenants of defendants; but, giving this testimony its uttermost effect, it falls very far short of making out an adverse and continuous possession under the statute of limitations. The defendants have failed to sustain their defense.

The next inquiry is whether the complainant has shown legal title and a possession sufficient to sustain her bill to quiet title as against defendants. There must be clear proof of both possession and legal title in complainant, else, in the absence of a statute, her bill cannot be maintained. The Supreme Court has said:

"Those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity

141 F.—45

to give them peace or dissipate a cloud on the title.—Orton v. Smith, 18 How. 265, 15 L. Ed. 393. A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for, if his title is legal, his remedy at law by action of ejectment is plain, adequate, and complete; and, if his title is equitable he must acquire the legal title and then bring ejectment." Frost v. Spitley, 121 U. S. 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010.

The complainant has proven satisfactorily, although not denied by defendants, that whatever title vested in the original patentees, Ledford, Skidmore, and Smith, by the patent from the commonwealth of Kentucky, is now vested in her; and there is no claim made as a defense that the patent of the state of Kentucky made under the act of 1835 is null and void under the provisions of said act of 1855, nor is there any defense that this patent was obtained by fraud. We must, therefore, assume that whatever title to the land described in this survey and patent was in the county court of Harlan county, and in the state of Kentucky, at the execution and delivery of the patent, passed to the original patentees and is now in the complainant.

This legal title could not be affected by the fact that the commonwealth of Kentucky patented to Wm. C. Farmer and Thomas Forrester, on the 5th of July, 1846, a tract of land—12,900 acres—which was partly within the boundaries of the patent previously executed to Ledford, Smith, and Skidmore. That part of the land within the patent executed in March, 1845, had already been conveyed to Ledford, Smith, and Skidmore, and could not, of course, be again conveyed. We have read with care the testimony in the record touching the question of possession of complainant of the land conveyed by the patent of March, 1845, and are satisfied that before the institution of this suit, and at that time, complainant had possession of the land claimed by defendants under the patent of July, 1846, which is within the boundaries of the patent executed March 3, 1845, to Ledford, Smith, and Skidmore.

The taxes to the state of Kentucky have been paid by complainant, and those under whom she claims, for many, many years, and actual possession had been taken by her and held by tenants claiming under complainant's title for some time before the institution of this suit. This actual possession was within the boundaries of the survey and patent under which defendants claim title, as well as outside of those boundaries, but within the boundaries given in patent of the commonwealth of Kentucky to Ledford, Smith, and Skidmore. The complainant's title and possession as proven entitled her to equitable relief against defendants' claim of title to the land described in patent of July, 1846, which is within the patent executed in March, 1845.

There is, however, difficulty in determining the extent of this relief, because of the difficulty in fixing the boundaries of the 86,000-acre survey patented to Ledford, Smith, and Skidmore. The difficulty is in fixing the fourth corner of the survey. If the call from the third to the fourth corner is run according to course and distances, without regard to the call of "a stake near Cumberland Gap"—that is, "thence south, 60 degrees west, 8,320 poles"—the line runs into the state of Tennessee some eight or ten miles, and the corner would be near Powell river. But if this course be disregarded, and the line run along the crest of the Cumberland Mountains towards Cumberland

Gap, and with the county line of Harlan county and the state line into the Gap, the fourth corner might be ascertained, and would be by a stake in the center of Cumberland Gap.

This Gap has, according to the testimony of Gen. Duffield, an average width of 50 yards between the sides of the pass, and a length of about 500 yards; and if the crest of Cumberland Mountains is followed along the state (Kentucky) line, it will go to about the center of this Gap. Gen. Duffield testifies that the course of the crest of Cumberland Mountains, after leaving the third corner of the 86,000-acre survey, is south, 60 west, and thence the crest of the mountains runs south, 38 west, for about 3 miles, and that if all of the meanders of the crest of the mountains are reduced to a straight line from the third corner to the fourth corner of the 86,000-acre survey, assuming the line to run with the crest of Cumberland Mountains, the line is south, 70° 12′ west, and the distance 7,934 to the center of the Gap, instead of 8,320 poles, as called for in the patent.

If the call of this patent had been for a stake in or at Cumberland Gap, instead of a stake near Cumberland Gap, there would be no serious difficulty in disregarding the course mentioned in the patent and running the line so as to reach the natural object—i. e., Cumberland Gap—called as the fourth corner. The word "near" in this patent should be construed to mean at or in Cumberland Gap, as neither the county of Harlan could sell, nor the state of Kentucky could convey, land lying in Tennessee. This is, we think, the proper construction, rather than run the lines of this patent according to the courses and distances, so as to include many thousands of acres of land in the state of Tennessee.

The complainant is entitled to relief prayed for in her bill as amended, and her costs herein expended.