## ROXANA PETROLEUM CORPORATION v. COLQUITT et al.

## DOUGLAS OIL CO. v. SAME.

District Court, W. D. Texas, El Paso Division. February 16, 1929.

Nos. 203, 204.

Koerner, Fahey & Young, of St. Louis, Mo., for complainant Roxana Petroleum Corporation.

O'Connor, Holden & Cobb, of Tulsa, Okl., for complainant Douglas Oil Company.

W. A. Wright, of San Angelo, Tex., for complainants.

James Cornell and J. F. Sutton, both of San Angelo, Tex., L. W. Elliott, of Sonora, Tex, and Belcher & Montague, of Del Rio, Tex., for defendants.

BOYNTON, District Judge. In these cases the complainants bring suit in equity in their nature actions to remove cloud from title and to quiet title, praying for equitable relief; separate suits being filed, as originally brought by the complainants at the Pecos division of the Western district of Texas, and later being transferred to the El Paso division of the court for disposition; in their amended bills of complaint filed by complainants herein, alleging diversity of citizenship, the Roxana Petroleum Corporation as incorporated under the laws of the state of Virginia, and the Douglas Oil Company as incorporated under the laws of Oklahoma, and the defendants as residents of the state of Texas, and the lands in question as located in Pecos county, which is within the Pecos division of the United States court for the Western district of Texas; the defendants named being W. H. Colquitt, receiver, as receiver, Jerry Monroe, Henry Monroe, and other Monroe children, and also Mrs. M. A. Smith and husband, W. A. Smith.

Complainants allege execution by defendant Mrs. M. A. Smith and husband, W. A. Smith, of various oil and gas leases on various tracts of land located in Pecos county, Tex., set forth and described in complainants' bills, respectively, for a valuable consideration; and that for a valuable consideration such oil and gas leases on said tracts of land were duly assigned and transferred by various assignees named, holding under Mrs. M. A. Smith, to the complainants, and the titles to such leases acquired, owned, and held by the Roxana Petroleum Corporation as in its bill recited, and certain royalty interests by the Douglas Oil Company as in its bill set forth and described; that complainants are in possession under said leases and said royalty rights and interests, and have expended large sums of money in acquiring said leases and royalty assignments and in the development and operation of such lands, in the erec-

tion of structures and rentals paid, and in the manner and respect as set forth in complainants' bills, respectively.

It is further alleged that on the 15th day of September, 1927, in cause No. 1775, entitled M. A. Smith et ux. v. Henry Monroe, then and now pending in the district court of Pecos county, Tex., the defendant herein, Jerry Monroe, purporting to act for and on behalf of and as next friend of his mother, Mrs. Mattie A. Monroe, being the defendant Mrs. M. A. Smith, named in these actions herein as defendant, filed petition in intervention in said cause, in the district court of Pecos county, Tex., complaining of the defendant W. A. Smith; and alleging, in substance, that Mrs. M. A. Smith entered into a marriage relation with W. A. Smith on the date as therein specified, to wit, July 29, 1917, and that at the time of entering into such marriage relation the said Mrs. M. A. Smith was of unsound mind, legally incompetent to comprehend the nature and effect of such status; and praying that such marriage relation should be annulled for such reason; further alleging, in said plea in intervention filed in cause No. 1775, that Mrs. M. A. Smith was incompetent to enter into any legal contract, to execute leases, transfers, deeds, etc., during all of the period of time covering the period during which the oil leases were entered into and executed by Mrs. M. A. Smith and husband, W. A. Smith, under which complainant Roxana Petroleum Corporation claims title, and the Douglas Oil Company to have acquired their royalty interests, as in their said bills alleged; and other and further allegations as to the incompetency of Mrs. M. A. Smith, that she was of unsound mind and legally incompetent to act, did not possess the mental capacity to understand the nature, character, and effect of instruments executed by her during the period of time referred to, and that she had continued to be of unsound mind and legally incompetent to act, and was so at the time of the filing of said petition in intervention.

It is further alleged in said petition in intervention filed by the defendant Jerry Monroe in said cause 1775, in the district court of Pecos county, Tex., that applicant Jerry Monroe, is a son of the said Mrs. Mattie A. Monroe, is much devoted to her, is acting with the knowledge and consent of her other children, seven in number, and, while at one time prior to the pretended marriage the said Mattie A. Monroe executed a will by the terms of which she left her property to her children, share and share alike, and while her mental condition is not such as would enable her to

make another will which might be probated, and while her children aforesaid would succeed to her property, share and share alike, and while the said Jerry Monroe has a financial and material interest as shown by the facts, yet he is prompted in asking to intervene in said cause by his love and devotion to his mother and his desire to have the property placed in the hands of some one who would manage it prudently, economically, and in a businesslike way, and to prevent the expending and squandering of the entire estate of his mother; and in said application and petition praying for the appointment by the court of a receiver to take control of all of the properties and estate of Mrs. M. A. Smith.

Complainants further allege in their pleadings that on September 19, 1927, lis pendens notice was filed in the lis pendens record of Pecos county, Tex., by James Cornell, as attorney for intervener, Jerry Monroe, of the pendency of said cause 1775 in the district court of Pecos county, Tex., and of the filing of the petition in intervention therein by Jerry Monroe, and that by virtue thereof title was asserted to all of the lands, the various sections of land embraced in what is known and designated as the "Monroe Ranch," including the tracts of land to which the Roxana Petroleum Corporation asserts claim under oil and gas leases, as in its bill of complaint alleged, and those tracts of land in which the Douglas Oil Company asserts claim to certain royalty interests in the minerals contained in said land.

Complainants in their said bills of complaint further allege that the receiver, W. H. Colquitt, has brought numerous suits in the district court of Pecos county, Tex., following his appointment as receiver in said cause 1775, bringing said suits as such receiver and also as next friend of Mrs. M. A. Smith, to set aside and hold for naught all oil and gas leases on the tracts of land given, as relating to the tracts of land in the various sections embraced in what is designated as the "Monroe Ranch."

Complainants, herein, allege that Mrs. M. A. Smith was competent, was of sound mind, and legally competent to act and appreciated the nature, character, and effect of the instruments and contracts entered into by her, under and by virtue of which complainants assert ownership of the mineral rights as in their bills set forth; and that the filing of said plea of intervention in said cause 1775, in the district court of Pecos county, Tex., lis pendens notice, and, as further set up in the supplemental bill filed by the complainant Roxana Petroleum Corporation, the bringing

of the several suits by the receiver and as next friend of Mrs. M. A. Smith, filed in the district court of Pecos county, Tex., as in complainants' bills alleged, and the execution of certain powers of attorney from Jerry Monroe, Henry Monroe, and other Monroe children, to James Cornell, and the recording of same in Pecos county, Tex., in the deed records of Pecos county, Tex., has created a cloud, or clouds, on the rights, titles, equities, privileges, and properties of complainants, for which complainants pray for relief herein for removal of such clouds as have been so cast on the title of complainants, and to restrain the casting of clouds upon their said title, and the interference with their use and enjoyment of the properties and rights which they are entitled to under and by virtue of the oil leases and assignments of royalty rights as alleged by them, and quieted in their title to same.

The defendants filed motion to dismiss complainants' bills herein respectively, on the ground of want of equity in complainants to maintain equitable cause of action as in their bills alleged, which matter was presented to the court at length, and overruled. Following such action of the court in overruling of the motion to dismiss, answers were filed by the defendants herein, by the defendants Mrs. M. A. Smith and husband, W. A. Smith, and joint answers filed on behalf of the defendants Jerry Monroe, Henry Monroe, and other Monroe children named as defendants herein, and separate answers on the part of, or by, the defendant W. H. Colquitt as receiver.

The defendants Jerry Monroe, Henry Monroe, and others, in their answer and pleadings filed herein, deny having made assertions as alleged in complainants' bills as made in bad faith, alleging and averring that every statement made by them in the petition in intervention by Jerry Monroe and other defendants, made in said pleadings in cause No. 1775 or otherwise, statements made by them with reference to unsoundness of mind of Mrs. M. A. Smith, and her legal incapacity to understand the nature, character, and effect of instruments executed by her, that such statements were made by the defendants in good faith, and that they believed such statements to be true, and that the condition of bodily infirmity and mental infirmity of Mrs. M. A. Monroe Smith rendered her incompetent to understand the nature and effect of the instruments relied upon by complainants, and that she was and is incapable of understanding the nature and effect thereof; and, answering further, they renew and affirm, al-

lege, and aver that Mrs. M. A. Smith was incompetent at all times when she executed the instruments under which complainants claim, and that she is still incompetent, was incompetent at the time of filing of said answers by the defendants herein. Then follows a disclaimer by each and all of said defendants as to any present title or interest in and to the mineral rights claimed and asserted by the complainants in the tracts of land in question.

The defendants Mrs. M. A. Smith and husband, W. A. Smith, file answer or pleading in terms calculated to have the effect and to adopt the benefits of any findings that might be made in this cause in favor of W. H. Colquitt, receiver, by reason of allegations filed herein and contentions made by said receiver herein.

Attention is here directed to the fact that the concluding clause of W. H. Colquitt, receiver's, amended answer filed herein contains a prayer for affirmative relief, cancellation of all instruments under which complainants claim and assert title in and to the mineral rights, oil and gas leases, and royalty assignments to the tracts of land in complainants' bills alleged.

The defendant W. H. Colquitt, as receiver, answering herein denies specifically all material allegations contained in complainants' bills, respectively, including allegations therein contained to the effect that Mrs. M. A. Smith was of sound mind and legally competent to act, and legally bound by the various instruments executed by her under which complainants claim; and further alleging, averring, and avowing affirmatively that Mrs. M. A. Smith was of unsound mind and legally incompetent to act, incapable of understanding the nature and effect of transactions entered into and the instruments executed by her, at the time of their execution, relied upon by complainants as basis of title and ownership of the mineral rights and interests in question, that she was of unsound mind and legally incompetent to act prior to the execution of such instruments, during all of such time, and has continued so, and is now of unsound mind and incompetent, and closes with prayer for affirmative relief, viz.: That the instruments described in the bills of complaint be canceled as a cloud upon the title of Mrs. M. A. Monroe.

On motion, the above cases were consolidated.

On June 12, 1928, a special master was appointed herein to take testimony and make findings of fact and submit recommendations of law in this cause. After presentation and hearing of much testimony and argument be-

fore the special master, during which several weeks, in fact three or four months, was largely consumed, the special master, on October 30, 1928, filed report herein setting forth his findings of facts and recommendations as to conclusions of law; something over one hundred witnesses having been summoned and appearing before the master, and testifying with reference to matters of fact involved in this controversy, mainly with reference to the mentality, questions of soundness or unsoundness of mind and legal capacity of Mrs. M. A. Smith; when transcribed the same constituting a record of some 4,513 pages.

The findings of the master being in favor of complainants, defendants filed exceptions to the master's findings and report herein, in number seven exceptions, that have been presented to the court, together with the record of testimony and evidence introduced and heard before the master, and the same argued ably and at length before the court by counsel representing all parties, supplemented by written briefs on the facts and the law, with citations of numerous authorities, all of which have been carefully considered by the court.

In their second and third exceptions, defendants urge that their plea in abatement should be sustained, and the cause dismissed in so far as same relates to suit to remove cloud from the title, or quiet title, or granting of relief prayed for by complainants in and to certain named sections of land, mineral rights therein asserted by complainants; defendants contending that such relief could not be granted without the state of Texas being a party, in so far as such suit seeks to quiet the title to the mineral interests claimed by complainants in said named sections of land.

■ The state of Texas could not under the law be made a party defendant in this a suit brought by private parties, as a state cannot be sued by private parties without its consent. Further, any decree that may be entered by the court herein will not in any manner be binding on, or affect any right of, the state of Texas, and all rights, if any, of the state of Texas, can be fully protected by a suit or suits brought by the state of Texas, the only party that can sue for the protection or recovery of any such rights, if same exist. This suit may be brought and prosecuted to final determination of all issues and controversies existing between the parties to the cause of action here alleged. The court holds the state of Texas is not an indispensable party to the determination of the matters in controversy existing between complainants and defendants as in complainants' bills alleged in rela-

tion to the particular sections of land, in said plea named, as disclosed by the record herein. Equity Rule 39 (28 USCA § 723); United States Mortgage & Trust Co. et al. v. M., K. & T. Ry. Co. of Texas et al. (C. C. A. 5th Cir.) 272 F. 458; Williams v. United States, 138 U. S. 514, 11 S. Ct. 457, 34 L. Ed. 1026; Watts v. Wheeler, 10 Tex. Civ. App. 117, 30 S. W. 297.

The fifth exception of defendants to the master's report and findings herein is to the effect that the master, in his findings of fact, disregarded the preponderance of the credible testimony adduced before him in reporting and finding Mrs. M. A. Monroe Smith to have been of sound mind and to have had the mental capacity sufficient legally to have executed the leases, assignments, and instruments under which the complainants are asserting title; and in said exception it is asked by the defendants that the leases and assignments of royalty rights under which complainants assert claim should be canceled.

■ The special master, in his findings of fact, reported "that at the time of the execution of the different contracts, deeds and conveyances, now the subject of inquiry Mrs. Smith possessed the necessary mental capacity to understand the nature and consequences of her acts, and that she is pathologically, clinically and legally of sound mind;" and further "that at the time of the execution of the instruments under which Complainants claim Mrs. Mattie A. Smith was possessed of legal capacity to convey, and did legally convey the interest, rights, title, and estate as alleged by Complainants in their respective bills, and that they are entitled to the relief prayed for."

The court has carefully examined the record in this cause with special reference to the testimony as adduced from the record herein, as submitted to the court, bearing upon question as to the soundness of mind, mentality, and capacity of Mrs. M. A. Smith to understand the nature, character, and legal effect of the instruments executed by her, as disclosed by the record, under which complainants assert title herein; and the court finds as a finding of the court herein that the findings of the special master in such particular as hereinbefore recited are not only supported by the evidence as disclosed by the record in this case, but that same are supported by a great preponderance of the credible testimony, as disclosed by the record herein. The court not only concurs in the finding of the master in such particulars, but here finds, as disclosed by the record herein, Mrs. M. A. Smith to have been of sound mind, legally

competent to act, and of mental capacity and understanding enabling her to understand the nature, character, and effect of the instruments executed by her, under which complainants assert title herein, at the time of the execution of such instruments, prior thereto, to have continued so' since such time, and to be of such condition mentally at the time of the hearing and offering of the testimony herein, and at all times, as disclosed by the record in this case.

Testimony disclosed in the record is of a character indicating that Mrs.'M. A. Smith was born and reared amidst very humble surroundings and poverty, has undergone many hardships in her life, possesses practically no education in the knowledge of art, literature, history, and of geography, except it be as to territory over which she herself has traveled, in the vicinity or vicinities in which she lives or has lived, and had little knowledge of business affairs prior to the death of her husband, in 1913, that most of her life has been spent in a ranch country, sparsely settled communities, and that she has done much hard physical work. Her husband, John Monroe, at his death left a will vesting her with title to their entire properties, and by so doing evidenced his confidence in her ability, not only in her ability to handle business affairs, but to give proper consideration to their seven or eight children, born during their marriage and reared by John Monroe and his wife, Mrs. M. A. Smith, under circumstances as disclosed by the record; that as to the handling of business affairs her education has been gained from the school of hard experience, as it were; but that, from the many transactions that the evidence discloses Mrs. M. A. Smith to have entered into and the nature and result thereof, same disclose that Mrs. M. A. Smith, in the handling of her business affairs, has demonstrated soundness of mind, understanding, and perception as to the transactions entered into by her, and the nature, character, and effect of the same, and in same has manifested shrewdness, capacity, competency, and efficiency in the handling of such affairs.

Defendants' other four exceptions to the findings and report of the special master are to the effect that, as disclosed by the pleadings and record in this cause, complainants, under the statutes of trespass to try title of the state of Texas, had an adequate remedy at law; that defendants, and none of them, had in any manner interfered with the full and free exercise of complainants' claimed ownership of the mineral rights involved, or of the free development, production, and disposal thereof; that defendants had asserted no adverse claim or title to such mineral rights, were strangers to the title; that by no act of any of the defendants had any cloud been placed or cast on complainants' asserted title or claims to the mineral rights alleged as claimed by them in the tracts of land in question, or threatened; and that the evidence failed to prove any allegation or fact that would entitle complainants to maintain these suits in equity or any relief as by complainants herein prayed for; and that the master was in error in holding any cloud had been cast on complainants' title.

Defendants, in support of contentions so urged in the foregoing exceptions, contend that, as shown by the record in this case, no cloud has been cast on the complainants' title to the mineral rights and interests claimed by them, or any act committed by any of said defendants that would entitle defendants to maintain their suits in equity herein, and the granting of relief as prayed for, and cite as in support of such contentions, the following authorities: Pixley v. Huggins, 15 Cal. 128; Devine v. Los Angeles, 202 U. S. 313, 26 S. Ct. 652, 50 L. Ed. 1046; Rich v. Braxton, 158 U. S. 375, 15 S. Ct. 1006, 39 L. Ed. 1022; Ashburn v. Graves (C. C. A.) 149 F. 968; and Ashburn v. Graves, 215 U. S. 331, 30 S. Ct. 108, 54 L. Ed. 217.

Put in a few words, it has been said that "a cloud upon a title is a title or incumbrance apparently valid but in fact invalid"—something that would require extrinsic evidence to defeat or remove; that, if apparently void and same would fall of its own weight, without requiring extrinsic evidence to defeat same, it does not constitute such a cloud as would warrant or support an action in equity to remove same. Such the court finds to be the rule of law declared and announced in the cases above cited by defendants, and practically the extent of the holdings in said cases, as in any manner bearing upon or applicable to the facts disclosed by the record in the case at bar.

Complainants' suits herein, by allegations as set forth in their said amended bills of complaint, are brought, not only to remove cloud from title, but to prevent creation of cloud on title and to quiet title in complainants to the mineral rights covered by said oil and gas leases and assignments of royalties, and the undisturbed use, enjoyment, and disposition of such rights and properties.

Where the title or rights asserted by defendants would prevail unless plaintiff introduce extrinsic evidence to defeat it, a cloud upon the title is held to result, and in such

case the jurisdiction of a court of equity may be invoked, not only to remove such cloud, but to prevent its creation when the possible danger therefrom is imminent and real, in that it is of a nature calculated to harrass, disturb, interrupt, and prevent the plaintiff in the use, enjoyment, and disposition of his property or that may materially affect its market value, and plaintiff has no full, complete, and adequate remedy at law.

As disclosed by the master's report herein, and by the record in this cause, it is shown, that on August 24, 1927, in the district court of Pecos county, Tex., W. A. Smith and wife, M. A. Smith, filed a certain suit in the form of trespass to try title, for the recovery of certain lands in Pecos county, Tex., known and designated as the Monroe ranch, embracing some 21,175 acres of land, being numbered cause No. 1775 on the docket of the district court of Pecos county, Tex., as against Henry C. Monroe as sole defendant in said suit, for the recovery of possession of said land because of default in the payment of rental therefor by Henry C. Monroe, to whom it would appear said land had been leased, a lease having been executed by Mrs. M. A. Smith and husband, W. A. Smith, to Henry C. Monroe, as to surface rights in said land, in the nature of what is termed a grass lease, for grazing purposes; that on the 15th day of September, 1927, Jerry Monroe, a son of Mrs. M. A. Smith, filed in said cause a plea in intervention on behalf of and as next friend of his mother, Mrs. M. A. Smith, substantially as set forth and alleged in complainants' bills of complaint herein, as found by the master, and recited as testimony introduced on hearing of this cause, and said action brought in part to annul the marriage ceremony entered into by Mrs. M. A. Monroe with W. A. Smith, on July 27, 1917, and containing allegations to the effect that Mrs. M. A. Smith was then of unsound mind and legally incompetent to act, and also further alleging, as a part of the cause of action asserted in said plea in intervention, that Mrs. M. A. Smith was incompetent to handle her property, and that it was necessary that a receiver be appointed to preserve the same; and further, that an order of court was entered upon said application, appointing W. H. Colquitt as receiver, to take possession of the properties and estate of Mrs. M. A. Smith, and bring suits for the annulment of certain instruments that had been executed by her relating to said lands, including those claimed by the complainants herein; that W. H. Colquitt was appointed, and qualified as temporary receiver; that said cause is still pending in the district court of Pecos county, Tex., no final judgment ever having been entered in said cause, W. H. Colquitt not having been shown to have been appointed as permanent receiver therein, and the same is still pending and undisposed of on the docket of said court; and the filing by W. H. Colquitt, as receiver, of some seventy-six suits in number, involving all of the lands—that is, the same being brought as against Henry Monroe and certain named defendants, in each of said suits respectively, but as relating to and brought as to all of the lands embraced within the Monroe ranch, including those tracts in which complainants assert interests and claims—the filing of the lis pendens notice by James Cornell on September 19, 1927, in Pecos county, Tex., in which it is recited that title is claimed to all of said lands; and that such proceedings were brought for the purpose of having leases, deeds, and contracts executed by Mrs. M. A. Smith, which would include the lands in which complainants assert title, annulled and set aside and held for naught because of unsoundness of mind and incapacity of Mrs. M. A. Smith to enter into a legal and binding contract.

The record further discloses the filing, in September, 1927, of powers of attorney, placed of record in Pecos county, Tex., from Mrs. Ida Mae Ramsey and husband, G. W. Ramsey, to James Cornell, bearing date November 22, 1927, and filed for record January 30, 1928, in the deed records of Pecos county, Tex., and power of attorney from Jerry Monroe, Henry Monroe, Zack Monroe, Mrs. B. E. Taylor, and other defendants to James Cornell, of date November 22, 1927, filed for record in the deed records of Pecos county, Tex., on January 30, 1928, in which said parties appoint James Cornell to act as their attorney in fact in connection with the prosecution of suits looking to the annulment of oil and gas leases, instruments, and contracts entered into by their mother, Mrs. M. A. Smith, and as relating to the tracts of land to which complainants assert title in this cause, and in said powers of attorney vesting said attorney in fact with power to appear and answer for said parties in any and all suits in which they may have an interest at that time pending in the state courts or federal courts, in any and all courts, and conveying to said Cornell power to act for them and as their attorney in fact in protecting their then interest, all interest which they were then vested with in and to said land, as in said powers

of attorney recited, or that they might hereafter acquire.

As said by Justice Gray, in case of Frost v. Spitley, 121 U. S. 552, 556, 7 S. Ct. 1129, 1131 (30 L. Ed. 1010): "Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession, or harrassed by suits in regard to that title." But the bill cannot be maintained without clear proof of both possession and legal title. Frost v. Spitley, supra. Orton v. Smith, 18 How. 265, 15 L. Ed. 393.

Those who have a clear, legal, and equitable title to land connected with possession, in possession, have a right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title. Orton v. Smith, supra. Frost v. Spitley, supra.

It is undisputed, uncontroverted, that complainants are by the record shown vested with both the legal and equitable title, in possession of the mineral rights, and other rights evidenced by the oil and gas leases and royalty rights as assignees thereof as in their amended bills alleged, unless it should be found that Mrs. M. A. Smith was of unsound mind and legally incompetent to execute the instruments under which complainants claim such title and hold possession. It having been found as a finding of fact by the special master, as hereinbefore recited, and concurred in by the court herein, that Mrs. M. A. Smith, at the time of execution and delivery of said instruments under which complainants claim, was not of unsound mind, but, on the other hand, was then of sound mind, competent to understand, and did understand, the nature, character, and legal effect of such instruments and transactions, such finding is held by the court to be more than amply supported by the evidence introduced in hearings before the master, as disclosed by the record, and the court, on examination of the record, finding, as the court does, that the evidence discloses Mrs. M. A. Smith at such times, prior thereto, continuing since, and now to be of sound mind, legally competent to transact and handle her own business, and to understand the nature, character, and effect of instruments so executed by her, legally obligated and bound by the terms of same, holds, as disclosed by the record, complainants to be vested with the legal and equitable title, and in possession of the mineral rights and interests alleged and claimed by them in their said amended bills of complaint, respectively, as evidenced by the instruments alleged and relied upon by them, as shown by the pleadings and record in this case to have been signed and executed by Mrs. M. A. Smith and husband, W. A. Smith, under which complainants hold and assert title.

The court further holds the matters hereinbefore recited, consisting of the plea in intervention filed by Jerry Monroe, as next friend, in the district court of Pecos county, Tex., the pendency of said cause, the appointment of W. H. Colquitt as receiver, with powers as hereinbefore recited, the bringing of the suits as hereinbefore recited by said receiver, the filing of the lis pendens by James Cornell as attorney for Jerry Monroe, the adoption of said pleadings by plea in intervention of other defendants, the powers of attorney executed to James Cornell, and placed of record in Pecos county, Tex., and other matters as hereinbefore recited, constitute a cloud on complainants' title, and also threaten to cast other clouds upon such title and interrupt and disturb complainants in their development, use, and enjoyment of said properties and detrimental to the market value thereof, and complainants entitled to maintain these suits in equity herein for removal of such cloud, or clouds, from their title and for decree declaring that they are duly vested with legal and equitable title to said mineral rights and properties, and quieted in their title as against the defendants individually, and W. H. Colquitt as receiver, and as claiming through or under Mrs. M. A. Smith, and as to Mrs. M. A. Smith and husband, W. A. Smith, and relief prayed for to be granted and controlled by decree to be entered herein; complainants having no adequate remedy at law, and the matters so complained of and as shown by the record causing complainants irreparable damage. Sharon v. Tucker, 144 U. S. 533, 547, 12 S. Ct. 720, 36 L. Ed. 532; Lawson v. United States Mining Co., 207 U. S. 1, 9, 28 S. Ct. 15, 52 L. Ed. 65; Holland v. Challen, 110 U. S. 15, 3 S. Ct. 495, 28 L. Ed. 52; Allen v. Hanks, 136 U. S. 301, 311, 312, 10 S. Ct. 961, 34 L. Ed. 414; Williams v. Beasley (Tex. Civ. App) 300 S. W. 193; and Yauger v. Skinner, 14 N. J. Eq. (1 McCart.) 389.

Justice Field, in the case of Sharon v. Tucker, 144 U. S. 533, 547, 12 S. Ct. 720, 724 (36 L. Ed. 532), after citing a number of cases regarded as applicable to the facts before the court for determination in said case, says: "Many other authorities to the same purport might be cited. They are only illustrative of the remedies afforded by courts of equity to remove difficulties in the way of owners of property using and enjoying

it fully, when, from causes beyond their control, such use and enjoyment are obstructed. The form of relief will always be adapted to the obstacles to be removed. The flexibility of decrees of a court of equity will enable it to meet every emergency."

On trial of this case and hearings before the master, Mrs. M. A. Smith appeared voluntarily as a witness and testified at such hearings. She was upon the witness stand upon seven different occasions, and by the record is shown to have been asked some three thousand questions, or more, and made answers to same, sometimes being on the stand for a day or more than a day at a time. Mrs. M. A. Smith and husband, W. A. Smith, in their testimony before the master, ratified execution of all the various instruments under which complainants claim and assert title, and relied upon herein, and confirmed the execution and delivery of same, and testified that it was the purpose, intention, and desire of said Mrs. M. A. Smith to recognize and be bound by said instruments, in accordance with the terms and provisions thereof, and that it had never been her intention to disavow the same, and that all said proceedings, pleadings, etc., in cause No. 1775 in the district court of Pecos county, Tex., were without her consent or approval, and that she opposed same, and that the allegations therein made as to her unsoundness of mind and legal incapacity to act were not true.

There was no finding made by the master, as disclosed by the record in this case, upon the question in complainants' amended bills alleged, that the allegations contained in the plea of intervention filed in cause 1775, in the district court of Pecos county, Tex., and adopted by the defendants Henry Monroe and Will Monroe, as to the unsoundness of mind and legal incapacity of Mrs. M. A. Smith to act at the time she executed the instruments under which complainants assert title, and during the period of time as in said plea of intervention alleged, were made in bad faith, and controverted by defendants Jerry Monroe, Henry Monroe, and others by their pleadings filed in this cause herein, though there would seem to have been ample testimony offered at the hearing upon which to have predicated a finding; attention being here directed to affidavits of Henry C. Monroe and Jerry Monroe, of date February 25, 1927, and March 12, 1927, respectively, in which said two defendants make solemn oath that they had been closely associated with their said mother, viz. Mrs. M. A. Smith, all her life, and had ample opportunity to observe her method of attending to business, and that in their opinion their mother is a shrewd business woman, and entirely competent mentally and otherwise to take care of her interests in any business transaction, and then within a period of not more than practically six months Jerry Monroe files a verified petition in intervention in cause 1775, in the district court of Pecos county, Tex., in which he alleges, avers, and avows Mrs. M. A. Smith to have been of unsound mind at the time of entering into the marriage relations with W. A. Smith in 1917, prior thereto, and has continued so since such time, and was so at the time of the filing of said plea of intervention, which pleading and allegations in such particular were adopted by pleadings filed on the same date, viz. September 15, 1927, by the defendants Henry Monroe and Will Monroe, and the powers of attorney executed as hereinbefore recited, to James Cornell, and other matters, should a finding have been made by the special master that such allegations were not in good faith. The court might here also add that during such period of time, period of six months, there is shown to have been no change in the mental condition or capacity of Mrs. M. A. Smith, that, had there been a finding by the special master to the effect that such allegations were not made in good faith, there would have been ample testimony in the record to have sustained the same; and the further allegation that said proceedings were instituted with the intention of clouding the title of complainants and defendants in other suits. In the opinion of the court, the filing in such solemn manner of the plea in intervention by Jerry Monroe, hereinbefore referred to, and adopted by other defendants as recited, and recitations contained therein, and the filing of the lis pendens notice, recitations contained in the powers of attorney executed to James Cornell, hereinbefore recited, and allegations contained in the petitions filed in the various suits, numbering some seventy-six or more, by W. H. Colquitt, not only as receiver but as next friend of Mrs. M. A. Smith, it may be inferred from same that the intention was by such acts to cloud the title of complainants herein, as well as defendants named in these other suits, and that no attorney, or any one examining the records of Pecos county, Tex., which recite the matters hereinbefore referred to, or as disclosed in an abstract reflecting the records of said county as they now stand, could arrive at any other conclusion than that by such instruments title to complainants' interests herein

were clouded, that there appeared as of record matters which constitute a cloud against the title and interests claimed by the complainants herein, and as threatening further suits, further proceedings, with reference to such title, and as of a character calculated to disturb and interrupt the use and enjoyment of the properties and rights that the 'court holds in law are vested in complainants herein.

Hence all exceptions urged by defendants to the report and findings of the master herein are by the court overruled.

As to the form of decree to be entered herein, decree should be entered declaring complainants duly vested with legal and equitable title as to all rights described and vested under and by virtue of the several oil and gas leases, transfers, and assignments thereof as relating to the various tracts of land in complainants' amended bills described, of which they are assignees, as per the terms of such instruments, and of royalty rights and interests in same, as complete, as against Mrs. M. A. Smith and husband, W. A. Smith, and Jerry Monroe, Henry Monroe, and other defendants named herein as children of Mrs. M. A. Smith or otherwise, and W. H. Colquitt as receiver; and that all defendants be enjoined from asserting title to any right or interest so vested in complainants as per the terms and provisions of said oil and gas leases and royalty rights vested in complainants by the execution and delivery by Mrs. M. A. Smith and husband, W. A. Smith, as in complainants' amended bills of complaint respectively alleged, of which complainants are assignees and now declared the legal and equitable owners thereof for value, in possession, and as against the defendant W. H. Colquitt, receiver, on his prayer in the nature of cross-action herein for cancellation of the leases and instruments under which complainants claim and assert title.

■ As to matter of allowance of compensation to the master for services performed and rendered by him under order of the court herein, in accordance with the order previously entered, the court would have been much pleased and relieved had counsel found it agreeable and been able to arrive at an agreement fixing amount of such allowance and compensation, as the court hoped counsel would. Counsel having failed to arrive at any such agreement, it, of course, becomes incumbent upon the court to fix the same, and, by virtue of Equity Rule 68 (28 USCA § 723), that is a matter which is, of course, within the discretion and under the control of the court, regardless of any agreement that might have been made, even had one been reached by counsel. Not having been made, it therefore becomes incumbent upon the court to fix the amount of same.

■ The court, in fixing the fee to be allowed the special master in this case, while afforded valuable suggestions and aid by the opinion of the Supreme Court rendered in the case of Newton v. Consolidated Gas Co., 259 U. S. 101, 42 S. Ct. 438, 66 L. Ed. 844, does not feel the decision in that case is so full and complete as to be controlling in any sense upon the court here, but to be considered as suggestive of matters proper for consideration by the court in fixing compensation. The court has read the cases cited by defendants here, and one or two other cases. All of said cases but reaffirm the provisions of Equity Rule 68 as to fixing such compensation, that the amount should be determined with reference to the work done, time employed, and responsibility assumed. Many of the decisions, practically all, refer somewhat as a criterion to the salaries paid the judiciary as a matter that might be borne in mind by the court in fixing fees of special masters, as the services performed by the special master are in their nature judicial, somewhat different from a receivership in the handling of business properties, and so forth, and that the compensation should be regarded from the light of fees commensurate with the performance of judicial services; that same should probably be liberal to a point beyond any per month salary estimate allowed a judge who may occupy a position for a long period of time, but, while liberal, it should not be exorbitant. The court has given a great deal of consideration to this matter. The court has had other matters at this point, and other points, where compensation for special masters has been allowed, mostly by agreement of counsel, approved by the court, and one or two by action of the court. A great deal of time was consumed by the master; much responsibility was placed upon him under appointment of the court in this case; much time consumed in the taking of testimony, as disclosed by the record; much time consumed in the examination of authorities, listening to and considering arguments of counsel, and in arriving at a determination of the important questions here involved—perhaps something in the neighborhood of five months' time.

The court is disposed to feel that the contention made by defendants as to the amount of the fee that should be allowed is for allowance of too small a sum. The court, in fixing the amount the court will now desig-

480

nate, feels that in doing so the court has taken into consideration, and considered carefully, the volume of work performed, time consumed, and the responsibility, and, while the court is disposed to be as the court feels liberal, the court will guard against being exorbitant, allowing exorbitant fees. These matters involve somewhat a matter of precedent to the court here, as cases of this character are very likely to arise frequently in the future. The court fixes the amount of compensation of the special master in this case at the sum of $15,000. In making such allowance, the court also wishes to say the court appreciates very much the careful, painstaking services performed by the master, great responsibility he had, and, as the court is pleased to think, conscientious, honest, and able performance of such duties by the master, and the court appreciates his services in this matter, and trusts that all parties concerned will feel, taking everything into consideration, under all circumstances, in accordance with the language of Equity Rule 68, that the compensation is warranted from all viewpoints.

As to the matter of costs and apportionment of same in this case, the court will divide the costs as between the complainants— that is, the two complainants on the one hand and the defendants, all defendants except Mrs. M. A. Smith and husband, W. A. Smith, on the other hand; that is, of the total costs incurred herein in these consolidated proceedings that the complainants shall bear one-half, and that the other one-half shall be charged up as against Jerry Monroe, Henry Monroe, and all other defendants than Mrs. M. A. Smith and husband, W. A. Smith, and that no costs be adjudged against them.

In connection with the pleadings filed by the defendants Jerry Monroe, Henry Monroe, and other defendants herein, there is in the last portion of the same a pleading in the nature of what in equity would be termed a disclaimer, but the first portion of such pleadings negatives and denies allegations contained in complainants' bills, and the same are thereby made, and are issuable facts in this case. Furthermore, said defendants by their actions, as in this opinion hereinbefore recited, have necessitated the institution and maintaining by complainants of their action herein, as in their respective amended bills of complaint alleged, and said defendants have appeared by counsel, been represented by counsel throughout the hearings in this case in the matter of pleading, presentation of same, motions for dismissing, taking of testimony, hearings before the master, and in the presentation of the exceptions to the master's report herein, and all the way through have taken an active part, urging and contending all along that Mrs. M. A. Smith was of unsound mind and legally incompetent to act, and not resting upon merely a plea of disclaimer herein, and for that reason the court should adjudge them as chargeable with costs in this case. Newton v. Consolidated Gas Co., 265 U. S. 78, 83, 44 S. Ct. 481, 68 L. Ed. 909; McDonald v. McDonald (D. C.) 203 F. 724; Bates Federal Equity Procedure, §§ 305 and 306; Montgomery's Manual Federal Procedure (3d Ed.) § 980, p. 740; St. Louis & S. F. Ry. Co. v. Hadley (C. C.) 168 F. 317, 357; Southern Bell Telephone & Telegraph Co. v. Railroad Commission of South Carolina (D. C.) 5 F.(2d) 77, 98.